## Real Estate & Mortgage Co. of Louisville v. Duke.

(Decided Nov. 21, 1933.)

M. B. PFEFFER and LAWRENCE W. GRAUMAN for appellant. FRANKLIN S. FITCH for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

On May 27, 1922, Owen Duke, a negro, entered into an agreement with McAlister & Co., representing W. H. McAlister, to purchase lot No. 194 in the Woodlawn addition in Louisville, Ky., for the sum of $275. He paid $1 down and agreed to pay the balance in install-

ments of $1 payable weekly. The contract contained the following provisions:

> "(1) It is agreed that the purchaser shall keep all special assessments and taxes against said lot paid as the same become payable if any be assessed. (2) It is agreed that when the said purchase price and all special assessments of taxes (should any be levied) have been paid, the seller or his trustee will execute to the buyer a warranty deed conveying said lot."

The fourth clause of the contract provided that, in case the buyer should be sick and unable to follow his usual vocation, the weekly payments should be suspended during the continuance of such disability, but in no event for more than 10 consecutive weeks. In the fifth clause it was provided, if the special assessments or taxes levied on the lot were not paid when due or if the weekly payments should be more than 4 weeks delinquent, except in case of sickness, the seller might, at its option, either declare the entire balance of the purchase price due and collectible, or it might rescind the contract, and, in the event of such rescission, all payments already made by the buyer should be taken and retained by the seller.

W. H. McAlister later incorporated the business in which he was engaged under the name of Real Estate Mortgage Company of Louisville, and the property was conveyed to the corporation. The contract between Duke and W. H. McAlister was entered into on May 27, 1922, and, if Duke had paid the installments as they fell due, he would have been entitled to a deed to the property in September, 1927. Duke, however, became delinquent in his payments shortly after the contract was made, and on October 6, 1928, he had paid to appellant on the purchase price of the lot the sum of $238. He paid $13 in 1922, $24 in 1923, $67 in 1924, $56 in 1925, $35 in 1926, $29 in 1927, and $13 in 1928.

In October, 1928, appellant was threatening to institute foreclosure proceedings, and, on October 6, Duke went to appellant's office to ascertain what he could do to retain his home. It appears that after he entered into the contract for the purchase of the lot he erected a two-room house thereon, which he claims cost him approximately $200. Duke was informed by E. I.

Rawles, an employee of appellant, that the company had exercised its option to forfeit the contract, but it would agree to let him have a lease with an option to purchase the property provided he paid $25 in cash. Duke paid $25 in cash and signed an agreement, which was a lease with an option to purchase. He claims that appellant's employee represented to him at the time that it was the same as the contract of 1922, and he did not discover it was a lease until he had made payments amounting to $19. Be that as it may, the contract of October 6, 1928, provided, in substance, that Duke was to pay $2 for 52 weeks as rental, at the expiration of which time he had the option of purchasing the lot by making an additional payment of $47.13.

On December 7, 1929, he brought this action against the Real Estate Mortgage Company, in which he alleged that he had paid $282 on the purchase price of the lot, or $7 more than he was required to pay under the May, 1922, contract, and he asked that the contract of October, 1928, be canceled, and for a specific performance of the May, 1922, contract. The circuit court granted the relief sought in the plaintiff's petition, and the defendant has appealed.

A number of reasons are assigned why the judgment should be reversed, but all of them center around the argument that the contract of October, 1928, cannot be set aside, except on the ground of fraud, and since the only misrepresentation claimed to have been made by appellant is that Duke was told that the lease contract was merely a continuance of the contract of purchase, and as he continued to make payments after he discovered the nature of the second contract, he waived the fraud. Duke did not admit that he continued to make payments after he learned the 1928 contract was a lease with option to purchase, but claimed that he ceased making payments as soon as he discovered the nature of the contract. It is admitted that he paid $19 subsequent to October, 1928. The passbook given to Duke, in which the credits for payments made were entered by appellant's agents, shows that the last payment was made on July 27, 1929.

We do not think the case turns on when Duke learned the nature of the October, 1928, contract or whether or not he made payments after he knew it was a lease contract with option to purchase, but that the

decision of the case is controlled by the situation of the parties at the time the lease contract was made. At that time Duke had paid $238 under the contract of purchase, and by the payment of $37 more would have been entitled to a deed to the lot. On the day the lease contract was made he paid $25, which left only $12 due on the purchase price. In order to prevent the appellant from dispossessing him he signed a contract agreeing to pay it $104 as rent and then $47.13 in addition if he desired to purchase the lot, a total of $151.13, or $139.13 more than he was required to pay under the contract of purchase of May 27, 1922. In other words, after permitting Duke to improve the property and to pay under the first contract for a period of more than 6 years and when he owed only a balance of $12, the appellant attempted to exercise its option to rescind the contract and to forfeit all payments that had been made. In the circumstances the contract of October 6, 1928, was unfair and unconscionable. The record fails to show that appellant paid any taxes or special assessments on the lot or that any were levied. Duke's sole default was his failure to make the weekly payments promptly, but he had paid all except $12 of the agreed purchase price when the contract of October 6, 1928, was made. He was then in pecuniary distress and unable at once to pay the small balance due and, threatened with the loss of his home, he was in the power of appellant and compelled to enter into a contract which on its face is unfair. Where a contract is obtained under such circumstances, equity will grant relief. In Pomeroy's Equity Jurisprudence, vol. 2, sec. 948, the author says:

"Whenever one person is in the power of another, so that a free exercise of his judgment and will would be impossible, or even difficult, and whenever a person is in pecuniary necessity and distress, so that he would be likely to make any undue sacrifice, and advantage is taken of such condition to obtain from him a conveyance or contract which is unfair, made upon an inadequate consideration, and the like, even though there be no actual duress or threats, equity may relieve defensively or affirmatively."

The above-quoted text was cited and followed in Buford v. Louisville & N. R. Co., 82 Ky. 286, and Herzog

v. Gipson, 170 Ky. 325, 185 S. W. 1119. The contract of purchase reveals on its face that time was not of its essence. The forfeiture clause was intended simply as a security for the payment of the purchase price. In these circumstances the forfeiture provided for by the contract will be disregarded by a court of equity, unless the failure of the purchaser to pay according to the strict terms of the contract is intentional or willful. Pomeroy's Equity Jurisprudence, vol. 1, sec. 455. In the contract of May 27, 1922, it was stipulated that all payments retained by the seller in the event of a rescission should be taken and retained as and for liquidated damages for the breach of the contract and not as a penalty. The language of the agreement, however, is not conclusive as to the character of the sum forfeited or retained, and the true intent of the parties will be arrived at by a scrutiny of the entire transaction. Allison v. Cocke's Executor, 106 Ky. 763, 51 S. W. 593, 21 Ky. Law Rep. 434.

It would be an absurdity to call the payments sought to be retained by appellant liquidated damages. They clearly amounted to a penalty and one that, under the conditions disclosed by this record, a court of equity will not enforce. Undoubtedly appellant took advantage of Duke's necessitous condition, and, in order to save his home, he was required to relinquish a right to obtain a deed upon the tender of $12 and to agree to pay $151.13 over a period of a year. As said by the chancellor in his opinion:

"A more one-sided deal could hardly be imagined. To say that Duke in so doing acted voluntarily and with full knowledge of his rights is simply to shut one's eyes to the truth."

Some claim is made by appellant that it is entitled to interest on the delinquent payments, but the chancellor concluded that the $7 overpayment was fair compensation for this item, and in this conclusion we concur.

The judgment is affirmed.