## C. I. T. Corporation v. Thompson.

March 19, 1943.

Wilbur Fields, Woodward, Dawson & Hobson for appellant.

No brief for appellee.

Opinion of the Court by Judge Thomas—Reversing.

This is a claim and delivery action, filed by appellant and plaintiff below, against appellee and defendant below, in the Jefferson circuit court on November 19, 1941, wherein plaintiff sought to recover from defendant the possession of an automobile which he had purchased from the Leyman Motor Company on June 22, 1940, at the price of $1,159. As a part of the purchase price the seller took in a secondhand automobile owned by defendant at the agreed price of $325 and the deferred payment of $834 was agreed to be paid in monthly instalments of $34.75, until the debt was extinguished. The contract of sale was in writing, signed by defendant, the purchaser, and was later transferred to the plaintiff and appellant here, C. I. T. Corporation.

Considerably prior to the filing of the action defendant had defaulted in making the monthly payments, leaving unpaid a balance on the purchase price of $486.50. The total of the monthly payments made by defendant was $347.50. The contract retained title in the seller with the privilege of taking possession of the automobile at any time default in payment was made, with the right to dispose of it as the seller saw proper, and for all payments to become forfeited and to be considered as rental for the use of the car while in the possession of the buyer which is clearly evasive, since it is actually a penalty. No evidence was heard at the trial —the defendant making no issue by any answer or pleading of any kind, although he was duly summonsed. The petition prayed judgment "for the possession of said property, for its costs herein expended and for all proper relief to which it may appear entitled." The writ prayed for was issued by the clerk and delivered to the sheriff who took possession of the car thereunder and retained it for the legal period within which the defendant might execute bond for its retention but which he failed to do.

The cause was then submitted to the court and the judge thereof wrote, and made a part of the record, an opinion of sixteen pages, in which he analyzed the terms of the contract as he interpreted them, and finally concluded that "The practical effect of my conclusions is the cancellation of the 'Conditional Sale Contract' for illegality. In effectuation of those conclusions judgment will be entered as follows." He then overruled plaintiff's motion for a judgment but continued the order of

delivery issued upon the filing of the action until further orders of the court. Those rulings were then followed by the rendition of a judgment in favor of defendant against plaintiff for $325, the fixed value of the taken-in car, with interest from the time the contract was made, and a judgment for defendant against plaintiff for the additional sum of $347.50—being the amount of cash payments defendant had monthly made until he ceased paying. A lien was also given on the involved automobile in favor of defendant for the total of the two judgments rendered in his favor, amounting to $672.50.

Plaintiff was directed in the judgment to pay the amount of the judgments rendered against it to the receiver of the Jefferson circuit court upon the order of the defendant, Thompson. All of the above was followed by this order: "When this direction shall have been complied with an order for the disposition of the car will be entered. The case is reserved for further orders." From that judgment plaintiff was granted and has perfected an appeal to this court.

The judgment was rendered on July 27, 1942, lacking two days of being two months after our opinion in the case of Farmers & Depositors Bank v. Taylor, 290 Ky. 744, 162 S. W. (2d) 764, was handed down, and with which the court rendering the judgment appealed from was fully aware—not only of the fact that such opinion had been rendered, but the court was also acquainted with its contents, as is evidenced by the fact that in the opinion the Taylor case is referred to, followed by the court's statement that "I am not in sympathy with that decision," and which sentiment might be shared by this court. But in determining the issues involved in the Taylor and other preceding cases it felt itself bound by the law as previously declared, either by statute or the opinions of this and other courts; provided no constitutional right of the defendant was invaded. We cited in the Taylor opinion text authorities and six opinions of this court upholding the right of the seller to retain title in himself to the property sold until it was paid for according to the terms of the contract, and also upholding the rights of the seller to peaceably take possession of the property upon default by the buyer, but if he was unable to do so without committing a breach of the peace he might obtain the possession under an action for

claim and delivery. Those late cases, so cited in the Taylor opinion, began with A. C. Morris & Company v. Heaton, 235 Ky. 66, 29 S. W. (2d) 617, and closed with the case of Cartwright v. C. I. T. Corporation, 253 Ky. 690, 70 S. W. (2d) 388, the holdings in which were, of course, followed in the Taylor opinion, and which latter was a case wherein we reversed a judgment rendered by the same judge who rendered the one now under review and which, in the circumstances related, creates an impression but little short of amazement.

We have hereinbefore said in this opinion that we might not be in sympathy with the doctrine of the cases referred to, by which we meant only that we were not in sympathy with all of the stipulations contained in the conditional sales contract whereby the incumbered property could be reclaimed by the seller, and when done he became its absolute and unincumbered owner. Therefore, in our opinions—including the one rendered in the Taylor case supra—we declared such contracts to be nothing more nor less than a mortgage by the purchaser to the seller of the property purchased, and the only effect of the provision for reclaiming the property by the seller was to enable him to enforce his lien without resorting to court procedure for that purpose. We, furthermore, held in those cases—following the conclusion that the contract possessed all of the elements of a mortgage—that the contract should be acknowledged and recorded to protect the interest acquired in and to the property of innocent parties. Munz v. National Bond & Investment Co., 243 Ky. 293, 47 S. W. (2d) 1055. However, we furthermore pared the express terms of the contract by prescribing that the seller could not dispose of the property retaken by him without notice to the purchaser, and which was thus expressed in the Taylor opinion [290 Ky. 744, 162 S. W. (2d) 766]: "Therefore, if the sales contract contained stipulations for repossessing the property by the seller when default in deferred payment is made, such possession might be taken when it could peaceably be done and the lien enforced by a sale of the property after due notice given to the purchaser of the time and place of the sale, whether privately or publicly made."

In none of the opinions heretofore rendered by us was any reference made to section 361.180 of KRS (section 2651b-18 of Baldwin's 1936 Revision of Carroll's

Kentucky Statutes) which says: "Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred." which we now construe to mean that the transfer of title by the seller to the purchaser may be postponed by the terms of the contract until complete payment of the purchase price is made. It will be perceived that in the Taylor opinion, in prescribing for the giving of notice of the sale of the property by the purchaser after taking possession thereof, should be given "whether [the sale was] privately or publicly made." It is quite possible that we used the word, "privately," therein as distinguishing the sale made by the purchaser in such circumstances from a judicial sale, where a private sale was agreed to by the purchaser without intending to approve a strictly private sale by the seller, since notice of the time and place of the latter character of sale not so agreed to would scarcely furnish any protection to the purchaser, but which he might obtain if the sale was publicly made whereat competitive bidding could be made. We now conclude that the sale by the seller should be conducted in the latter manner, i. e., a public sale preceded by notice to the purchaser and after reasonable advertisement. Such interpretation of the character of contracts under consideration affects the rights of the parties only to the extent of relieving the seller from enforcing his lien through and by a court procedure, and furnishes a method by which it may be done by himself, and at the same time preserve all of the constitutional rights of the purchaser, since at such a described sale the purchaser could protect his interest by either himself bidding for the property or procuring others to do so.

The part of the judgment appealed from wherein the court rendered personal judgment against plaintiff under the conditions of the pleadings (i. e., where no issue was made or any such counter relief sought by defendant who filed no pleading whatever) we are constrained to regard as somewhat of an anomaly, so much so as to force the conclusion that it was wholly unauthorized, requiring no argument or citation of law to sustain it. We concur in the ruling of the court retaining the case on the docket for future orders, since the seller might indefinitely retain possession of the property without proceeding to effect a sale of it as herein

adjudged. If such deferment should occur after the lapse of a reasonable time, the defendant in the action would have the right to take such steps therein as might be necessary to correct such delay.

The reasons advanced by the court in its opinion holding such contracts illegal and void because of its arbitrary terms depriving defendant of constitutional rights are largely offset by the fact that the purchaser has all the while had the use of the purchased article, and in many instances (dependent upon the character of use) where it might become useless by wear and tear, but if the property had not become so impaired for that or any other reason, the purchaser had agreed for the lien to be enforced in the manner set forth in the contract. Our interpretation of it in former opinions plus the hereinbefore explanatory correction, amply protects all of the purchaser's rights, and at the same time preserves to the seller the right of self-enforcement of his lien without resorting to court procedure with its entailed costs and possible delay.

Wherefore, for the reasons stated, the judgment is reversed—except to the extent indicated—with directions to set it aside, followed by proceedings consistent with this opinion; the whole Court sitting.