## SMITH v. WARD et al.

Court of Appeals of Kentucky.
March 20, 1953.

386

Schumate & Schumate, Irvine, for appellant.

Lewis & Weaver, London, for appellees.

STEWART, Justice.

Appellant, Ben Smith, on August 26, 1945, contracted with the Postmaster General of the United States to carry the mail between Berea and Big Creek until June 30, 1948. With the permission of and upon a form prescribed by the Postmaster General, Smith, on March 12, 1947, entered into a subcontract with one Cecil Ray under which the latter agreed to perform the same service until the expiration of the contract for a consideration of $6,050 per year. Among the subcontract's provisions was a bond whereby Ray and appellees, F. G. Ward and Kellis Smith, as sureties, covenanted, upon default of performance by Ray, to pay Smith $10,000 as liquidated damages in lieu of a penalty. The subcontract further stipulated that Ray and his sureties would be subject to compliance with the postal laws of the United States and with all the requirements imposed upon Smith in his original contract with the Postmaster General.

It appears that Ray carried out his duties under the subcontract without incident until April, 1948. During this month Smith received letters from the Post Office Department informing him that Ray's employee was delivering mail late at some points on his route and in a damaged condition at others. These facts ultimately led to a letter on May 10, 1948, in which Smith was notified by the Post Office Department that Ray had moved to Indiana, and that the latter had not properly provided for supervising delivery of the mail, and that Smith would be required to take charge of the route as soon as possible. He did so on May 18, 1948. The contract was then extended by the Postmaster General in accordance with an express provision of the postal law of the United States from June 30, 1948, to September 1, 1948. Smith delivered the mail for the remainder of this time. When we employ the name "Smith" herein we refer only to appellant.

This suit was instituted by Ben Smith against F. G. Ward and Kellis Smith, as sureties on the subcontract, to recover from them $10,000 liquidated damages allegedly due as a result of Ray's violation of the terms of the subcontract. In his petition Smith also sought judgment in the alternative for $2,557 as damages purportedly suffered by him in the operation of the mail route from May 18, 1948, until September 1, 1948. Smith only proved actual damages in the sum of $1,655.28. At the conclusion of all the testimony he moved for a directed verdict for $10,000 for liquidated damages he claimed he was entitled to under the subcontract. This motion was overruled and Smith then moved for a directed verdict for $1,655.28 for alleged actual damages he contended he established. This motion was also overruled and the case was submitted to the jury, which found for appellees.

On this appeal, Smith urges a reversal of the judgment entered for the following reasons: (a) The court erred in not directing a verdict in his behalf for alleged liquidated damages in the sum of $10,000; (b) or, failing in that, the court erred in not instructing the jury to find for him his alleged actual damages in the amount of $1,655.28; (c) the court erred in giving the first and second instructions; and (d) the court erred in refusing to let him introduce competent evidence and in permitting appellees to introduce incompetent evidence.

Smith argues that the agreement pursuant to which appellees, as sureties, agreed to pay him $10,000 as liquidated damages in case of nonperformance by their principal is conclusive, since appellees entered into it with complete knowledge of what they were doing. Appellees, on the other hand, urge that even where parties agree to pay a stipulated sum as liquidated damages for breach of contract, such an agreement is not necessarily determinative of the question of damages. We subscribe to the latter view. We have held in a long line of cases that an agreement like the one before us will be enforced only where the damages are uncertain or difficult of reasonable ascertainment, and provided the amount agreed upon as liquidated damages is not too greatly disproportionate to the injury which might result. Elizabethtown Lincoln Mercury v. Jones, 313 Ky. 321, 231 S.W.2d 42; Kilbourne v. Burt & Brabb Lumber Co., 111 Ky. 693, 64 S.W. 631, 55 L.R.A. 275; and Commonwealth v. Ginn & Co., 111 Ky. 110, 63 S.W. 467. In the case at bar there is no doubt that the damages were easily ascertainable, so much so that Smith was able to calculate them to the penny. It is equally evident that $10,000 would be totally disproportionate to the sum proven by Smith to be his actual pecuniary loss, that is, $1,655.28. In view of these facts, we must hold that Smith was not entitled to $10,000 by way of liquidated damages and thus the court correctly refused to direct a verdict for that amount.

Smith next maintains the court should have peremptorily instructed the jury to award him the actual amount of damages of $1,655.28 he insists he proved was due him. This contention, like the first, is without merit. Mrs. F. G. Ward, wife of one of the appellees, testified that Smith requested her to write Ray, after the latter had gone to Indiana, and attempt to persuade him to return and again take over the route. This she said she had done. Ray testified he received Mrs. Ward's letter and he said the appeal contained in it caused him to go back to Jackson County on May 18, 1948, the day Smith repossessed the mail route. But Ray did not seek to renew the contract and it is clear this would have been impossible without the Postmaster General's consent. He stated he contacted Smith and offered to continue delivery of the mail over the route in question as an employee of Smith until the contract period expired and at no more than the subcontract price. Arthur Baldwin, a witness for appellees, testified he was present when Ray made this offer. Smith denied this happened and he insists he could not have accepted any such proposal even had he wished to do so, since Ray's subcontract had been cancelled. Smith subsequently employed other persons to carry out his contract in a ministerial capacity, just as Ray had done, without the approval of the Postmaster General. Such a practice was allowable under the postal regulations.

If we accept Ray's version of this controversy, then Smith would not be entitled to recover, since he could have avoided any loss to himself by hiring Ray and paying him only the agreed figure set forth in the subcontract. One injured by a breach of contract has a duty to minimize his damages. Dulworth v. Hyman, Ky., 246 S.W.2d 993. On the contrary, if we believe Smith's theory correct, Ray's offer to work after he had been released could not have been acceded to because of restrictions imposed on Smith by the Postmaster General. Consequently, we have an issue of fact that only a jury can determine, and the court properly declined to allow Smith by a directed verdict the actual damages he claimed.

We are unable to agree with Smith's contention relative to the first instruction. The argument on this score seems to be that it does not conform to the conclusion Smith draws from his analysis of the facts. We think the instruction was amply supported by the evidence and it clearly submitted to the jury appellees' defense to Smith's claim.

The question of the correctness of the court's second instruction presents some difficulty. Under it the jury was told, if they found appellees liable, they could award damages for the period up to and including June 30, 1948, but not up to September 1, 1948. Smith insists the latter date was the proper one to include in the instruction. Under the testimony introduced by Smith, practically all the expense incurred by him resulted from the extension of the contract to September 1, 1948. First of all, he was required to buy a pick-up truck, and numerous other items were related to this purchase, such as gas, oil, license fee, insurance, a tarpaulin, a truck bed, and the cost of lengthening the vehicle to carry the mail. The truck was not acquired, however, until June 29th, and it can be seen that, if the contract period ended on June 30th, Smith suffered very little damage before that time.

Appellees maintain that, if they are liable at all as sureties, their responsibility could not extend beyond June 30th. The court accepted their contention. The pertinent language of the subcontract reads:

"The said party * * * of the second part, and his sureties aforesaid, do jointly and severally undertake, covenant and agree, and do bind themselves and each of them to and with the said party * * * of the first part * * * to transport the United States Mail * * * on such schedule as the Postmaster General may direct and in full compliance with the postal laws and regulations and subject to all the requirements of said party of the first part under the said contract with the United States, for six thousand fifty and 00/100 dollars per annum."

Postal regulations provide:

" * * * in all cases of regular contracts the contract may, in the discretion of the Postmaster General, be continued in force beyond its express term for a period not exceeding six months, until a new contract with the same or other contractors shall be made by the Postmaster General." See 39 U.S.C.A. § 434.

The foregoing provisions lead us to the inescapable conclusion that Ray and appellees bound themselves as sureties on the subcontract, not only up to June 30, 1948, but for any extended period thereafter, not to exceed six months, which the Postmaster General might see fit to impose upon Smith, the original contractor. Ray in effect stepped into Smith's shoes and subjected himself under his subcontract to all of the terms and conditions Smith had undertaken in his contract. The jury should therefore have been instructed that the period for determination of damages was from May 19, 1948, to September 1, 1948, and the court committed a reversible error in its refusal to so instruct.

Coming now to the last assignment of error, Smith first contends he should have been permitted to testify as to the contents of a letter he received from the Post Office Department, which communication notified him his contract had been extended to September 1, 1948. Smith's cause of action was founded on the letter. It was shown the letter was lost and could not be produced, and it was established Smith's

counsel made every reasonable effort to obtain a certified copy of the original communication, but none could be secured because of postal regulations. Appellees argue the deposition of the proper official in Washington, D. C., should have been taken to substantiate this point. We do not agree with this view. The court, under the circumstances, should have allowed Smith to prove orally what the letter contained, the rule on this point being: "The absence of primary evidence from the jurisdiction of the court is one of the recognized grounds for the admission of secondary evidence." 20 Am.Jur., Evidence, § 434, p. 386.

█ Smith next argues that a letter to Ray from the Post Office Department, dated May 25, 1948, should not have been admitted as evidence. This communication, after informing Ray his subcontract had been terminated on May 17, 1948, told him he and his sureties would not be responsible on their subcontract after this date to the Postmaster General. The subcontract in suit was between Smith, on the one hand, and Ray and his sureties, on the other. The bond provided for therein did not inure to the benefit of the Postmaster General but only to Smith. This litigation involves only Smith and appellees as sureties. For this reason, the letter was incompetent. It should be excluded at the next trial, if the evidence be materially the same.

Wherefore, the judgment is reversed with directions that it be set aside and for proceedings consistent with this opinion.