**MATTINGLY BRIDGE CO., INC., Movant,**

v.

**HOLLOWAY & SON CONSTRUCTION CO. and Commonwealth of Ky., Department of Highways, Respondents.**

Supreme Court of Kentucky.

June 13, 1985.

Rehearing Denied Sept. 5, 1985.

William A. Young, Frankfort, for movant.

Leon Seidman, Louisville, E. Gaines Davis, Jr., Charles D. Moore, Frankfort, for respondents.

LEIBSON, Justice.

This appeal originates from a claim for liquidated damages by Holloway & Son Construction Co. ("Holloway"), as prime contractor, against Mattingly Bridge Co., Inc. ("Mattingly"), a subcontractor, charging that the subcontractor did not meet the completion date specified in its subcontract.

Holloway entered into a prime contract with the Kentucky Department of Highways ("Department") for the construction of an 8-mile section of the Bowling Green-Somerset (Cumberland) Parkway. Holloway subcontracted to Mattingly the construction of all of the concrete structures required by the prime contract. The completion date specified in the subcontract between Mattingly and Holloway was November 15, 1971. The completion date specified in the prime contract for the entire project between Holloway and the Department was December 1, 1971.

Both the prime contract and the subcontract contained liquidated damage clauses, virtually identical. The liquidated damages clause of the subcontract read in pertinent part:

"It is mutually agreed by and between the Contractor and the Subcontractor that time is of the essence of this subcontract, and that there will be sustained by the Contractor considerable monetary damages in the event of failure or delay in the completion of the work hereby contracted for by the Subcontractor, which damages will be difficult to definitely ascertain or establish, and the sum of Seven Hundred Fifty Dollars ($750.00) per day is hereby agreed upon by the parties hereto as the liquidated damages for each and every day after the fixed date of completion which the work hereby contracted for remains wholly or partially uncompleted. ... Said liquidated damages shall cease to accrue from and after the date when the work provided for in this contract has been completed and accepted by the owner [Department of Highways]."

After the completed project was accepted by the Department, which was sometime in 1972, the Department conducted a liquidated damage hearing against the prime contractor, Holloway, to determine liquidated damages that would be charged against Holloway for days delay in completion of the prime contract after December 1, 1971, the specified completion date. The Department decided, and Holloway accepted, that Holloway should be charged with 17⅔ days of liquidated damages at $750.00 per day, or $13,250.00, although the calendar date the project was finally inspected and formally accepted was not until July 1972.

Nevertheless, Holloway insists that it is entitled to recover from its subcontractor, Mattingly, liquidated damages at the rate of $750.00 per day from November 15, 1971, the completion date set forth in the subcontract, to July 19, 1972, the date upon which the total project was formally accepted by the Department.

This case has become a procedural nightmare. This is the third appeal. Much of the original litigation involved issues now resolved. We seek to confine this opinion to the one remaining question, whether Holloway is entitled to liquidated damages under the subcontract and, if so, what are the permissible limitations?

As we interpret the trial court's Findings of Fact following the first trial of this case, findings which have never been reversed, as between Holloway and Mattingly, "the whole of any delay" in completing the prime contract was attributable to Holloway, the prime contractor. None of the delay in completing the prime contract was found attributable to the subcontractor, although the subcontractor also failed to complete on time. The trial court found: "[t]here is no support in the evidence for any recovery of liquidated damages against Mattingly."

On appeal from that first judgment, reversed and remanded on other grounds, our opinion made certain observations regarding "recovery of liquidated damages for delay in completion of a contract by a primary contractor against the subcontractor" which have generated the present controversy. *Holloway & Son Const. v. Mattingly Bridge*, Ky., 581 S.W.2d 568, 572–73 (1979):

"First of all, if the contractor has been held liable under the terms and provisions of the primary contract for liquidated damages for delay in the completion of the whole project and the delay was occasioned by no fault of the subcontractor, then why in good conscience should the subcontractor be penalized for what is not his fault? On the other hand, if the delay was occasioned by the fault of the subcontractor, why should he not respond in damages to the degree that his fault bears to the whole of the penalty inflicted against the primary contractor? Also, we must bear in mind that the parties between themselves, by their subcontract, may fix a completion date different from that contained in the primary contract, in which event, as between the subcontractor and the primary contractor, the subcontract would fix liability."

The opinion fails to state how these observations apply to the facts of the present

case. On a second appeal following remand and retrial, the Kentucky Court of Appeals in a "NOT TO BE PUBLISHED" opinion rendered September 18, 1981, attempted to apply the above quoted language from the first Supreme Court opinion (*Mattingly* # 1) to the trial court's decision on the retrial. The trial court had again found that any delay on the part of Holloway in completing its prime contract resulted solely from its own fault and again held that Holloway was not entitled to liquidated damages from its subcontractor, Mattingly. After a discussion in the opinion of the facts and the law which sheds no light on the problem, the holding by the Court of Appeals on this second appeal (*Mattingly* # 2) was as follows:

"Therefore, we must remand this case to the trial court for a finding as to whether Mattingly did indeed miss completion date, and, if so, whether Holloway is entitled to liquidated damages under the subcontract."

For technical reasons the second appeal did not come to this Court. The Court of Appeals' decision in *Mattingly* # 2 is the law of the case, so far as it goes. The problem for the trial court on remand was to decide what the Court of Appeals had decided and apply it. The trial court made a valiant effort to understand and follow the mandate of the Court of Appeals. Without withdrawing its previous findings that "the whole of any delay" in completing the prime contract was in fact attributable to Holloway, and that "there is no support in the evidence for any recovery of liquidated damages against Mattingly," it interpreted the law of the case to require a judgment awarding Holloway liquidated damages commencing from November 15, 1971, in the sum of $750.00 per day for 193 days, totaling $152,554.23, the full amount claimed.

Thus the stage was set for the third appeal (*Mattingly* # 3). The Court of Appeals affirmed, but we have accepted discretionary review because none of the prior decisions have served to resolve the law in this case. If *Mattingly* # 2 is a mandate

that, regardless of whether Holloway suffered any provable damages from Mattingly's failure to complete by November 15, 1971, Holloway was entitled to liquidated damages, the next question is, for how many days? What about the decision of the Department of Highways charging Holloway liquidated damages for only 17-⅔ days delay in completion? What about the last clause in the subcontract:

"Said liquidated damages shall cease to accrue from and after the date when the work provided for in this contract has been completed and accepted by the owner [Department of Highways]"?

We interpret the language of our decision in *Mattingly* # 1, *supra*, 581 S.W.2d at 572–73, stating that "the parties between themselves, by their subcontract, may fix a completion date different from that contained in the primary contract, in which event, ... the subcontract would fix the liability," as recognizing that the liquidated damages clause provided in this contract was viable, not a penalty or forfeiture; that if the subcontractor missed his completion date, it was unnecessary to prove actual damages. But it does not follow that the amount for liquidated damages is unlimited. It is limited by both the language of the contract and the law of liquidated damages.

The holding in *Mattingly* # 1 recognizes there are two interlocking contracts, the prime contract and the subcontract, and premises the discussion of the subcontractor's liability with the phrase, "if the [prime] contractor has been held liable under the terms and provisions of the primary contract for liquidated damages for delay in the completion of the whole project." 581 S.W.2d at 572.

In the present case the primary contractor, Holloway, has been held liable under the terms and provisions of the primary contract for liquidated damages for delay in completion of the whole project, but only for 17⅔ days.

■ We adopt the language of the *Restatement, Second, Contracts* § 356(1)

(1981) as a reasonable expression of the rule applicable to liquidated damages:

"Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty."

"Anticipated loss" refers to the time of the making of the contract. "Actual loss" refers to the circumstances upon occasion of the breach. These are two prongs, which apply alternately. If the award of liquidated damages exceeds any reasonable limitation by either one or the other, to such extent it is unenforceable.

■ The Court of Appeals' holding in *Mattingly* # 2 was interpreted by the trial court to mean that if Mattingly, the subcontractor, failed to complete by November 15, 1971, the date specified in its subcontract, such failure per se triggered Holloway's right to liquidated damages from that date forward. Such interpretation is reasonable. But the Court of Appeals in *Mattingly* # 2 also directed the trial court to consider "whether Holloway is entitled to liquidated damages under the subcontract." Nothing in the Court of Appeals' decision in *Mattingly* # 2 mandates an end date for the time period for computing liquidated damages. This is left to a reasonable interpretation of language of the contract.

The language of the subcontract ties it to the prime contract. Liability under the prime contract was fixed in the proceedings at the Department of Highways at 17⅔ days. The completion date for the prime contract was December 1, 1971, fifteen days after the completion date for the subcontract. The present award to Holloway of liquidated damages of $152,554.23 for 193 days far exceeds the permissible limit by any reasonable interpretation of the opinion of this Court in *Mattingly* # 1, or the opinion of the Court of Appeals in *Mattingly* # 2.

Much of the present problem arises from confusion as to the present status of Kentucky decisions on liquidated damages. Historically contract provisions specifying liquidated damages were viewed with disfavor, as devices to extract penalties and forfeitures and against public policy. *See Real Estate & Mortgage Co. of Louisville v. Duke*, 251 Ky. 385, 65 S.W.2d 81 (1933); *C.I.T. Corporation v. Thompson*, 293 Ky. 637, 169 S.W.2d 820 (1943). In time the rule evolved that such devices would be recognized as a useful commercial tool to avoid litigation to determine actual damages. But two restrictions remain: they should be used only (1) where the actual damages sustained from a breach of contract would be very difficult to ascertain *and* (2) where, after the breach occurs, it appears that the amount fixed as liquidated damages is not grossly disproportionate to the damages actually sustained. *Fidelity & Deposit Co. of Maryland v. Jones*, 256 Ky. 181, 75 S.W.2d 1057, 1060 (1934).

However, in *Coca Cola Bottling Works v. Hazard Coca Cola Bottling Works*, Ky., 450 S.W.2d 515, 519 (1970), the language of the opinion uses only the first of the two prongs previously considered necessary. We stated:

"Courts should, and do, enforce the agreement unless the proof clearly shows that according to the circumstances existing at the time of the execution the amount was grossly disproportionate to the damage which might flow from a breach."

Notwithstanding this quote, we have not abandoned the second prong. In *Robert F. Simmons & Assoc. v. Urban Renew. & Comm. Devp.*, Ky., 497 S.W.2d 705, 706 (1973), we restated our basic rule in full:

"[T]he agreement will be enforced where the damages are uncertain or difficult of reasonable ascertainment and the amount agreed upon is not greatly disproportionate to the actual injury. See *Smith v. Ward*, Ky., 256 S.W.2d 385 (1953), and cases cited therein."

In the present case the trial court found that Mattingly's delay did not in fact delay Holloway in completion of its contract. But Holloway has urged us to consider evidence to the effect that Holloway incurred construction expenses because Mattingly did not perform on time far in excess of $750.00 per day. The trial court made no such finding. In any event, a liquidated damages clause benefits both parties to the contract. It removes the element of uncertainty as to the amount of damages actually sustained for both parties. Mattingly was in default after November 15, 1971. But the determination of damages is transformed by the liquidated damages clause from actual damages to $750.00 per day limited to the number of days to completion.

The trial court has found that Mattingly was in default from November 15, 1971 on, albeit this was not the reason Holloway failed to complete on time. The liquidated damages clause seeks to substitute the words of the contract for an evidentiary determination of what damages flowed from such default, and such an arrangement was not unreasonable in the circumstances. Thus the question we must decide is the outer limit of the number of days for which damages can be imposed. The contract makes this stipulation:

"Said liquidated damages shall cease to accrue from and after the date when the work provided for in this contract has been completed and accepted by the owner [Department of Highways]."

The trial court has stated at both the first and second trial of this case that "it is impossible for the sum of the parts to exceed the whole." From the standpoint of calendar date, the date when the project was finally completed is subject to debate. The trial court has established a "cutoff date of July 19, 1972," and there are facts to support such a calendar date. However, the completion date specified in the prime contract for the entire project between Holloway and the Department of Highways was December 1, 1971, and the final decision between Holloway and the Depart-

ment fixed completion at 17⅔ additional days. Thus this is the additional days beyond completion from a legal standpoint. This is the number of days delay legally charged to Holloway. We accept the first premise of the trial court that "the sum of the parts [cannot] exceed the whole." The parts in this case are the 15 days between November 15, 1971 and December 1, 1971, the dates for completion of the subcontract and for completion of the prime contract, plus 17⅔ days, the days fixed in the Department of Highways proceedings. 32⅔ days is the limit of the number of days beyond completion chargeable under any rational interpretation of the contracts at issue. At $750.00 per day times 32⅔ days, the award must be limited to $24,500.00. This gives Holloway full benefit of its contract with Mattingly for liquidated damages. Beyond this sum its claim can only be viewed as a windfall, grossly disproportionate to actual injury.

In short, while we respect the right of the parties here to fix liquidated damages by contract, we do not abandon our previous rule that forbids their award when nothing more than a penalty or forfeiture.

We reverse and remand to the trial court to vacate the previous judgment and enter a new judgment in which the amount of the award to Holloway for liquidated damages is $24,500.00.

STEPHENS, C.J., and GANT, LEIBSON, VANCE and WINTERSHEIMER, JJ. concur.

STEPHENSON, J., dissents and files a separate dissenting opinion.

AKER, J., not sitting.

STEPHENSON, Justice, dissenting.

In my opinion, the majority opinion misses the point. The fact that the Department treated Holloway leniently is irrelevant to the contract between Holloway and Mattingly Bridge. The advantage of the liquidated damage clause is that it was not necessary for Holloway to produce exact evidence of loss of profits sustained by reason of the delay of Mattingly Bridge in

completing its contract. I cannot say that the full amount claimed by Holloway occasioned by the delay in completion date is unreasonable in any respect.