**MAN O WAR RESTAURANTS, INC., Appellant,**

v.

**John MARTIN, Jr., Appellee.**

**John MARTIN, Jr., Cross–Appellant,**

v.

**MAN O WAR RESTAURANTS, INC., Cross–Appellee.**

Nos. 95–SC–235–DG, 95–SC–746–DG.

Supreme Court of Kentucky.

Aug. 29, 1996.

Rehearing Denied Nov. 21, 1996.

Gregory P. Parsons, D. Chad McCoy, Lloyd C. Chatfield, II, Stites & Harbison, Lexington, KY, for Appellant/Cross–Appellee.

William C. Jacobs, H. Brett Stonecipher, Lexington, KY, for Appellee/Cross–Appellant.

LAMBERT, Justice.

At issue here is the enforceability of a contract provision by which a corporate shareholder, who was also an employee of the corporation, was required upon termination of his employment to return his stock for the sum he originally paid. The trial court enforced the contract provision on grounds that the parties enjoyed broad freedom of contract and that no bad faith was shown in process of termination of the employment. The Court of Appeals reversed on the basis of public policy against forfeiture. In its view, the contract provision which required return of the stock operated as a forfeiture or a penalty and was thus unenforceable. We granted discretionary review as this issue appears to be of first impression in this jurisdiction.

When John Martin, Jr., was hired as manager of appellant's Sizzler Restaurant, he was permitted to purchase 25% of the stock in the corporation for the sum of $1,000. However, according to the terms of his five-year employment contract, Martin was required to return the stock in exchange for the amount he paid if his employment was terminated during the five-year term. Otherwise Martin's ownership of the stock was unrestricted. As a member of the board of directors, Martin participated in stock dividends, and was at liberty to sell his stock for whatever sum the market would have produced. Less than three years after the contract was entered into, Martin's employment was terminated and demand was made for return of the stock. This litigation followed.

A number of subsidiary issues and arguments have been raised which tend to distract from our analysis. Variously, contentions are made that the purchase price was a nominal price; that other shareholders, by virtue of their wealth, incurred greater financial risk than Martin; that Martin lacked the financial capability to obtain a franchise on his own; and that the stock was "given" for the purpose of performance motivation. It had also been suggested that appellant had a powerful incentive to terminate Martin's employment and thereby acquire stock of a substantial value for a modest sum; or that the stock was sold at a reduced price in lieu of greater compensation. While some or all of these factors may have been present, they are not reflected in the parties' contract or in the trial court's relevant findings of fact.

Under the contract, the Board of Directors was authorized to terminate appellee's employment for any reasonable cause. Martin sued challenging the termination of his employment and contended that appellant was without sufficient cause to terminate. From the evidence the trial court held otherwise. As its findings of fact were not clearly erroneous, we are bound thereby. CR 52.01. For purposes of this analysis, we fully accept that sufficient cause was shown for Martin's termination and that it was not in bad faith or for the purpose of improperly obtaining his stock. While fully accepting that appellee was rightfully terminated under paragraph nine of the employment contract, we must nevertheless determine whether the stock repurchase provision of paragraph eleven is enforceable. In our view, the fact of appellee's "for cause" termination is not decisive.

In support of its decision to enforce the stock return provision, the trial court found that appellant's executive officer, Robert Langley, had a policy to have franchise managers acquire an ownership interest. In this vein the trial court also found facts such as appellee's having earned more from this employment than from previous employment. Frankly, we fail to see how Langley's busi-

ness policy or appellee's greater earnings with this employer has anything to do with the enforceability of the stock surrender provision. It could be argued that Langley's policy should be construed in appellee's favor as Langley was serving his own purpose by vesting appellee with stock ownership.

Rather than risk being led astray by the subtleties and nuances urged by the parties, we feel greater confidence if our focus is limited to the certain facts without gloss or adornment. The facts are that for valuable consideration, appellee purchased stock in the appellant corporation. A provision of the contract provided that upon termination of appellee's employment by appellant, appellee would be required to return the stock which he had purchased in exchange for the sum originally paid. Whether a contract provision which compels the transfer of property without regard to its value or without resort to a formula for equitable compensation is enforceable under Kentucky law is the question we must answer.

Meticulously we have examined the view expressed on this issue by the Court of Appeals. In an opinion reversing by Judge Schroeder with which Chief Judge Lester and Judge Gardner concurred, the court said:

The first issue raised by Martin, which is one of first impression in Kentucky, is that the stock return · provision of the Agreement operated as a forfeiture or penalty for breach of a contract and, therefore, is unenforceable. We agree. Martin is both a minority stockholder and he was also an employee. Although damages for breach of a contract may be liquidated in agreements, terms fixing unreasonably large liquidated damages are unenforceable as against public policy. *Mattingly Bridge Co., Inc. v. Holloway & Son Const. Co., Inc.*, Ky., 694 S.W.2d 702 (1985). Terms of the Agreement which require a return of the stock at the price paid, without interest or appreciation, is to us a form of unreasonably excessive liquidated damages. In our view, the only way the stock return provision in the employment contract can be upheld is if Martin is paid book value or fair market value for the stock. *See Lewis v. H.P. Hood & Sons,* 331 Mass. 670, 121 N.E.2d 850 (1954). To hold otherwise would require Martin to forfeit the enhanced value of his stock. Equity detests forfeiture provisions and frequently will find them unenforceable. *Sebastian v. Floyd,* Ky., 585 S.W.2d 381 (1979); *C.I.T. Corp. v. Thompson,* 293 Ky. 637, 169 S.W.2d 820 (1943).

Slip op. at 3.

We fully agree with this view and adopt it hereby. We hasten to add, however, that book value or fair market value may not be the exclusive point of reference for ascertainment of equitable compensation in "buy-back" circumstances, if the contract so provides. Courts have approved various formulae for price determination and in general have given considerable deference to the parties' agreements. We are reluctant to invalidate contracts which have been negotiated by parties but feel compelled by principles of equity and fair-dealing to take such a step here. The stock return provision made no reference to any concept of value. It was utterly arbitrary and inimical to the concept of property ownership. One who may be compelled to surrender property to another for a sum which bears no relationship to the value of the property can hardly be said to be an owner.

A corporation and its shareholders are allowed to contract for a re-purchase or "buy-back" right. Robert Clark, *Corporate Law,* 765 (1986); 18B Am.Jur.2d *Corporations* § 1965 (1985). This right enables the corporation to reacquire shares on the occurrence of certain events whether or not the holder wants to sell. Such an event may be retirement, or as in this case, termination of employment. The exercise of such a right requires that a valuation be placed on the stock. Clark, *supra.* All accepted valuation methods take into consideration the corporation's fiscal performance as well as its current financial condition. 18A Am.Jur.2d *Corporations* § 702 (1985). Parties are allowed to agree upon a financial valuation under the "mutual agreement" method which allows the parties to agree to an initial fixed value for the stock, but requires that the parties at defined intervals (after six months, one year)

revisit their prior agreement to adjust the valuation to reflect changes in the actual market value. *Godine v. Liberty Shoe Co.*, 396 F.2d 366 (1st Cir.1968); 18A Am.Jur.2d *Corporations* § 703 (1985). If the parties cannot agree on these future valuations, then another recognized method of independent valuation must be utilized. We note that if Martin had died before termination, his estate would have realized the appreciated value rather than the original issue price. *Id.*

Courts have upheld contract provisions containing predetermined value for repurchase using book value [1] at either the date of termination or some fixed date in the recent past. *See, e.g., Smith v. Fettin Roofing Co.*, 213 Neb. 184, 328 N.W.2d 470 (1982); *Horne v. Drachman*, 247 Ga. 802, 280 S.E.2d 338 (1981); *Yeng Sue Chow v. Levi Strauss & Co.*, 49 Cal.App.3d 315, 122 Cal.Rptr. 816 (1975); 18B Am.Jur.2d *Corporations* § 1967 (1985). Such provisions take into account both the corporation's interest in its stock and the shareholder's right to equitable compensation for the transfer of his shares.

Our decision here should come as no surprise. In *Sebastian v. Floyd*, Ky., 585 S.W.2d 381 (1979), this Court struck down a time-honored contract provision on grounds that it amounted to a forfeiture. *Id.* at 383. We held that one who acquires ownership by means of an installment land contract may not be required to forfeit his equity upon default; that such a contract provision must be treated as a security device and the purchaser's equity fully accounted for. *Id.* Likewise, in *Mattingly Bridge Co. v. Holloway & Son Construction Co.*, Ky., 694 S.W.2d 702 (1985), we refused to enforce liquidated damages which were grossly disproportionate to actual injury. We relied in part on the forfeiture rule as follows: "In short, while we respect the right of the parties here to fix liquidated damages by contract, we do not abandon our previous rule that forbids their award when nothing more than a penalty or forfeiture." *Id.* at 706.

The flaw in this contract is its failure to recognize that upon transfer of the stock to Martin, he held it independently of his status as an employee. At that moment the stock became his property and strong public policy against forfeiture protects property from being taken without appropriate compensation.

If appellant had wished to avoid vesting Martin with an ownership interest, it would have been an easy matter to have created stock options exercisable upon the occurrence of definite events, after a certain date, or with regard to some other objective measures. By the terms of the contract, it would not have been in appellant's best financial interest to have kept Martin. Such a circumstance is so totally against sound public policy that we cannot sustain it.

By virtue of our holding, all other issues raised, both on direct and cross-appeal, are rendered moot.

Accordingly, the opinion of the Court of Appeals is affirmed and this cause remanded to the Fayette Circuit Court for further consistent proceedings.

STEPHENS, C.J., and BAKER, GRAVES, KING, LAMBERT, STUMBO and WINTERSHEIMER, JJ., concur.

---

1. "Accounting terminology which gives a going-concern-value for a company. It is arrived at by adding all assets and deducting all liabilities and by dividing that sum by the number of shares of common stock outstanding." *Black's Law Dictionary*, 165 (1979).