Michael GOETZ, Appellant

v.

ASSET ACCEPTANCE, LLC, Appellee

NO. 2014–CA–000749–MR

Court of Appeals of Kentucky.

NOVEMBER 18, 2016; 10:00 A.M.

Rehearing Denied February 27, 2017

BRIEF FOR APPELLANT: Christopher Wiest, Crestview Hills, Kentucky

BRIEF FOR APPELLEE: W. Scott Stinnett, Louisville, Kentucky

BEFORE: ACREE, MAZE AND NICKELL, JUDGES.

ACREE, JUDGE:

We must determine if the circuit court erred when it denied Michael Goetz's motion to enforce a previously entered agreed judgment. For the following reasons, we reverse and remand for additional proceedings.

The factual circumstances of this case are largely undisputed.

Appellee Asset Acceptance, LLC, sued Appellant Michael Goetz for money allegedly due and owing on a credit card account originating with Citibank.[1] Asset claimed Goetz was indebted over $11,000.00. The parties quickly entered into settlement negotiations. These discussions resulted in an agreed judgment containing the following provisions:

1. [Asset] shall have Judgment against [Goetz] for the settlement amount of $3,500.00.

2. [Goetz] shall pay to [Asset] the settlement amount of $3,500.00, to be paid over the next twelve (12) months in equal payments of $291.67 and a final payment of $291.63, with the first payment due on August 31, 2012, with a like payment due on the 30th of each month thereafter, until the full $3,500, is paid. ... [Goetz] shall have the option, at any time, to pay any and all amounts then due and owing fully or to prepay payments. **Upon payment by [Goetz] of the full $3,500, as provided in the schedule herein, [Asset] shall file a**

---

1. Asset is the assignee of Citibank.

satisfaction of judgment within 30 days and, if [Asset] shall fail to do so, [Asset] shall be liable to Goetz in the amount of $10 per day. The payments due and owing hereunder shall be made to Lloyd and McDaniel PLC[.] ...

3. It is further agreed that if [Goetz] defaults from the payment schedule set forth in paragraph 2 hereinabove, [Asset] shall have Judgment against [Goetz] for the sum of $11,219.00 [plus interest.]

(R. at 10) (emphasis added). Counsel for both parties signed the agreed judgment. It was then tendered to and signed by the circuit court, and entered of record on August 22, 2012.

Goetz made a lump sum payment in September 2012 satisfying the full amount owed under the settlement agreement. Asset does not dispute Goetz's claim that he made the $3,500 check made payable and delivered to Lloyd and McDaniel, PLC, and that the check was cashed on September 7, 2012.

Fifteen months later, Goetz filed a motion to enforce the agreed judgment. In that motion, Goetz stated he learned, upon applying for and being denied credit, that Asset had failed to file a satisfaction of judgment as Asset promised to do in the agreed judgment. Goetz sought $4,250.00 from Asset in accordance with paragraph two of the agreed judgment.[2] Asset opposed the motion. By order entered April 4, 2014, the circuit court denied Goetz's motion. This appeal followed.

■ Goetz argues the August 2012 Agreed Judgment should be enforced according to its terms. This is a question of law and our review proceeds de novo. Ragland v. DiGiuro, 352 S.W.3d 908, 912 (Ky. App. 2010)("Questions of law are reviewed de novo by an appellate court.").

In denying Goetz's motion, the circuit court ruled, without reliance on any specific rule of law as follows: "this Court finds that the recitation in the Agreed Judgment that [Asset] would be 'liable to [Goetz]' does not constitute an enforceable Judgment." (R. at 100). We cannot agree.

■ No less than any other judgment, an agreed judgment is a judgment of the court. Barrett v. Barrett, 287 Ky. 216, 152 S.W.2d 610, 612 (1941). Like all judgments, an agreed judgment that is signed by the trial court and entered of record has the force and effect of a judgment. Id. And, trial courts are fully empowered to enforce their judgments and to remove any obstructions to such enforcement. Akers v. Stephenson, 469 S.W.2d 704, 706 (Ky. 1970); E.I.C., Inc. v. Bank of Virginia, 582 S.W.2d 72 (Ky. App. 1979).

In this case, as noted, the August 2012 Agreed Judgment was signed by counsel for both parties, signed by the trial judge, and entered of record. It carried the force of law, and Goetz was entitled to have it enforced. The circuit court's basis for denying Goetz's motion has no foundation in Kentucky law.

■ Our inquiry, however, is not at an end. Asset offers alternative justifications upon which this Court may affirm the circuit court's decision.[3] It is "the rule in

---

2. Goetz claimed 425 days had passed since September 7, 2012, at $10 per day, for a sum total of $4,250.00.

3. We have also considered Asset's request that we ignore conclusory statements of Goetz that lack adequate citation to the record in violation of Kentucky Rules of Civil Procedure 76.12(4)(c)(iv) and (v). Those rules require an appellant to include "ample supportive references to the record" in support of his or her statement of the case and legal arguments. "We have wide latitude to determine the proper remedy for a litigant's failure to follow the rules of appellate procedure." Krugman v. CMI, Inc., 437 S.W.3d 167, 171 (Ky. App. 2014). Exercising that discretion, we decline

this jurisdiction that the judgment of a lower court can be affirmed for any reason in the record." *Fischer v. Fischer*, 348 S.W.3d 582, 591 (Ky. 2011). And, "[i]f an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds." *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 496 (Ky. 2014) (citing *Fischer v. Fischer*, 197 S.W.3d 98, 103 (Ky. 2006) ("If the summary judgment is sustainable on any basis, it must be affirmed.")).

Asset contends that, to be valid, the agreed judgment should have stated Goetz would have a "judgment" against Asset instead of stating only that Asset "shall be liable to Goetz." Asset cites no authority in support of its claim, and we have found none. The phrase "shall be liable" plainly means that Asset agreed to be held legally responsible or answerable if it failed to uphold its end of the bargain. *See* Black's Law Dictionary LIABLE (10th ed. 2014) (defining "liable" as "[r]esponsible or answerable in law; legally obligated"). We believe this language sufficiently clear to constitute a judgment.

Noting that the parties agreed Goetz would make payments over the course of a year, Asset contends that damages should not start accruing until September 2013, *i.e.*, thirty days after the expiration of that one-year period following entry of judgment. Accordingly, Asset argues, the damages Goetz now seeks are not clearly outlined in the terms of the Agreed Judgment. We disagree.

The Agreed Judgment expressly afforded Goetz the option "to pay any and all

amounts then due and owing fully or to prepay payments." Goetz exercised this right when he fully satisfied his obligation by paying $3,500 in September 2012. That started the time running during which Asset was obligated to satisfy its obligation under the agreement to file a satisfaction of judgment within thirty days. Asset failed to do so. In fact, Asset did not file a satisfaction of judgment until December 2013, fifteen months after Goetz's payment-in-full. Asset's argument here is without merit.

Asset also presented two arguments that the circuit court declined to address. The first was that Goetz failed to comply with a local rule. The second was that the $10 per day liquidated damages provision in the Agreed Judgment is an unenforceable penalty. Asset repeats the arguments before this court.

▮ Asset claims it did not receive a copy of the entered Agreed Judgment from the court because the document failed to contain a certification as required by Local Rule 5(C)(8) of the Kenton Circuit Court. That rule states:

> 8. Orders. All orders which are required under the Civil Rules to be served upon opposing parties or counsel, including judgments, final orders and orders affecting the running time for taking an appeal, shall contain directions to the Circuit Clerk for distribution thereof in the following manner:
>
> Mail copies to:
>
> John Jones
>
> Attorney for Plaintiff, Jane Doe
>
> 208 Main Street

Asset's request. Goetz's brief, while deficient, is not so deficient as to foreclose us from reviewing the issues raised. Our decision is not incompatible with our Supreme Court's lenient approach to the application of procedural rules in the area of appellate practice

and its adherence to the doctrine of substantial compliance. *See Kentucky Farm Bureau Mut. Ins. Co. v. Conley*, 456 S.W.3d 814, 818 (Ky. 2015) (Kentucky follows the rule of substantial compliance).

Anytown, Kentucky 41000

Asset is correct. The Agreed Judgment does not contain distribution directions. However, there is no evidence that Asset was prejudiced in any way that would excuse its performance as it agreed. Our reasoning is threefold.

First, this was an *agreed* judgment. Asset or its attorneys drafted the document and negotiated its terms. The document itself states that Asset's counsel saw and agreed to the judgment. Asset clearly was aware of the document's terms and its own obligations under the judgment.

Second, Goetz paid the agreed-upon settlement amount. We know this because: (1) Goetz affidavit to that effect went unrefuted; and (2) Asset eventually did file a satisfaction of judgment. We believe it specious that Asset would accept the negotiated payment in full and still question whether the negotiated agreed judgment had been filed with the clerk of the circuit court.

Third, the record reflects Goetz's counsel provided a file-stamped copy of the Agreed Judgment to Asset's counsel on August 23, 2012 at 10:24 a.m. Asset does not dispute this fact.

In light of these facts, we see no prejudice or harm to Asset flowing from Goetz's failure to fully adhere to Local Rule 5(C)(8). As a result, Asset's claim for relief based on Goetz's violation of the local rule is without merit.

Finally, we turn to Asset's liquidated damages argument. Asset urges us to declare the $10 per day provision an unenforceable penalty incompatible with Kentucky law. Goetz responds that this condition is nothing more than a customary liquidated damages provision to which Asset agreed and which Goetz is entitled to enforce.

Liquidated damages are damages "contractually stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches." Black's Law Dictionary DAMAGES (10th ed. 2014). A contract term "providing for liquidated damages will be enforced, provided it is in actuality liquidated damages and not a penalty. If such provision is in fact a penalty it will not be enforced and the injured party will be entitled to recover the actual damages suffered." *Patel v. Tuttle Properties, LLC*, 392 S.W.3d 384, 387 (Ky. 2013) (citation omitted). The distinction between a penalty provision and one for liquidated damages is that a penalty is imposed to secure performance of the contract and liquidated damages are to be paid in lieu of performance. *See generally id.*

Courts today tend to favor liquidated damage provisions. *Id.* They serve as a "useful commercial tool to avoid litigation to determine actual damages." *Mattingly Bridge Co., Inc. v. Holloway & Son Constr. Co.*, 694 S.W.2d 702, 705 (Ky. 1985).

> [C]ourts now are strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract, and without proof of the damages actually sustained.

*Patel*, 392 S.W.3d at 387 (quoting *Coca–Cola Bottling Works (Thomas), Inc. v. Hazard Coca–Cola Bottling Workings, Inc.*, 450 S.W.2d 515, 518 (Ky. 1970)). While favored, liquidated damages should only be used: (1) where actual damages would be "uncertain or difficult" to ascertain; and (2) "the amount agreed upon is not greatly disproportionate to the actual injury." *Mattingly*, 694 S.W.2d at 705 (quoting *Robert F. Simmons & Assoc. v.*

*Urban Renew. & Comm. Dev'p,* 497 S.W.2d 705, 706 (Ky. 1973)).

Here, we conclude that actual damages would be difficult to ascertain under the circumstances of this case. How does one measure, in dollars, the negative impact on one's credit rating stemming from the erroneous report of an unpaid debt? Further, to what extent was Goetz damaged when he was denied credit as a result of the supposed unpaid judgment? The actual loss caused to Goetz is difficult to prove.

We are also satisfied that the second *Mattingly* prong is met. This prong examines whether the amount fixed in the contract is "reasonable in light of the anticipated or actual loss caused by the breach[.]" *Mattingly,* 694 S.W.2d at 705 (quoting *Restatement, Second, Contracts* § 356(1) (1981)). We hold as a matter of law under these facts that this amount was reasonable.

We first note that our legislature has considered a similar question already—what is the appropriate daily damage when a lienholder fails to release a lien it is no longer entitled to claim? The question is answered in KRS[4] 382.365. That statute says if a lienholder, knowing the debt secured by the lien has been paid, fails to timely release the lien, he shall be "liable to the [debtor] . . . in the amount of one hundred dollars ($100) per day for each day, beginning on the fifteenth day after receipt of the written notice" of its failure to release the lien and "for an additional four hundred dollars ($400) per day for each day . . . after the forty-fifth day from the date of [such] written notice, for a total of five hundred dollars ($500) per day for each day for which good cause did not exist after the forty-fifth day from the date of written notice." KRS 382.365(4), (5). Obviously, the amounts chosen reflect the serious nature of negative credit events as well as the fact that the notified lienholder is in sole control of the duration of such daily damage. We cite this statutory language only to compare the legislature's perception of such daily damage with the parties' own determination of appropriate daily damage for the same thing—a creditor's failure to inform the world that a debt has been satisfied. We see no problem with the ten-dollar daily liquidated damages sum to which the parties agreed, in part, because it is between one-tenth and one-fiftieth of an amount the legislature deemed appropriate.

But, Asset argues that the cumulative liquidated damages amount Goetz claims of more than $4,250 exceeds his negotiated liability to Asset of $3,500. Asset claims, simply, that "if the agreed-to sum exceeds the whole value of the contract, the sum is a penalty." Ronald W. Eades, *"Penalties distinguished from liquidated damages,"* Ky. L. of Damages § 5:2 (Westlaw 2016). There is more than one reason this argument fails.

First, the "agreed-to sum" was not $4,250. It was $10 for each day in excess of thirty that Asset failed to file a satisfaction of judgment. Two factors yield the quotient of $4,250 in damages in this case: (1) the daily liquidated amount ($10) multiplied by (2) the number of days Asset failed to file the satisfaction of judgment. While the parties agreed to the first factor, Asset was solely responsible for determining the latter. When Goetz paid the sum of $3,500 on September 7, 2012, to Asset's legal counsel/collection agent, Asset was on notice that it had thirty days to perform its obligation under the contract before the liquidated damages provision took effect.

Second, Asset misunderstands what Professor Eades meant by "the

4. Kentucky Revised Statutes.

whole value of the contract[.]" The whole value of the contract in this case is not the value Asset received—$3,500. The whole value of the contract includes the value Goetz was to receive by Asset's timely filing of the satisfaction of judgment—the elimination of a negative event on his credit report. Asset did not have to bind itself to the duty of filing a satisfaction of judgment, nor did it have to agree to liquidated damages in lieu of timely performance of that duty. But it did. "That damages may be liquidated in advance of the breach, as a compensation to the party who is to suffer, in the event of a default is well settled," and this court "has no power to change the contract regulating the damages or the amount of recovery in order to grant relief." *Hahn v. Horstman*, 75 Ky. 249, 254, 1876 WL 8222 (1876).

Third, Professor Eades and Asset cite the case of *Hahn v. Horstman* for the proposition that liquidated damages cannot exceed the value of the contract. The circumstances of that case are notably different than the facts here.

In *Hahn*, a seller agreed to convey real property for $1,800 while simultaneously agreeing to improve the property or, failing to accomplish the improvements, to pay the buyer $20 per day for each day beyond the agreed upon completion date. *Hahn*, 75 Ky. at 252. Although the property was conveyed, none of the $1,800 purchase price was paid and the improvements were not completed on time. When the seller sued for the purchase price, the buyer counter-claimed for liquidated damages. *Id.* at 252–53. "Upon the final hearing the court below ... denied any recovery of the purchase-money, allowing to the [buyers] the full amount thereof by reason of the counter-claim, and from that judgment" the seller appealed. *Id.* at 253.

Surveying "[t]he principles recognized ... in determining whether the damages

agreed on are to be regarded in the nature of penalties or as liquidated damages[,]" *Hahn* cited various cases that had applied them. As our high court subsequently noted, *Hahn* turned on these particular principles:

> "[A]s a general rule where the actual damage can be ascertained from the nature of the contract itself, the courts are always inclined to disregard the language of the contract so far as it fixes the damages, and particularly in cases where a strict construction of the language used would result in oppression to the party against whom the claim is asserted, by giving to the complaining party more damages than he has really sustained."

*Fidelity & Deposit Co. of Maryland v. Jones*, 256 Ky. 181, 75 S.W.2d 1057, 1060 (1934) (quoting *Hahn*, 75 Ky. at 254). These circumstances are not present here.

First, we have already concluded that actual damages could not be readily ascertained. Second, Asset cannot claim to be oppressed by application of a contract provision it agreed to, the avoidance of which was entirely within its control. Third, we cannot say that the calculable liquidated damages amount is greater than the largely incalculable damages Goetz "really sustained" and Asset presented nothing to the circuit court to contradict that conclusion. *Hahn v. Horstman* is inapposite.

In sum, the alternative grounds offered by Asset to affirm the circuit court's decision find no support in the record or the law. We reverse the Kenton Circuit Court's April 4, 2014 Order and remand for a post-judgment hearing to calculate liquidated damages. Liquidated damages shall be calculated at the rate of $10 per day, for each day, beginning thirty days after Goetz delivered his $3,500 payment to Asset or any of its agents and ending on

the day the satisfaction of judgment was filed.

ALL CONCUR.