EVERGREEN LAND COMPANY,
Appellant,

v.

Lawrence GATTI, Appellee.

No. 74-229.

Court of Appeals of Kentucky.

Opinion of March 11, 1977 Withdrawn.

Opinion Reissued As Modified On Denial
of Rehearing Aug. 12, 1977.

William W. Lawrence, Lawrence & Lawrence, Louisville, for appellant.

Bernard B. Davis, Handmaker, Weber & Meyer, Louisville, for appellee.

Before HOWERTON, GANT and REYNOLDS, JJ.

HOWERTON, Judge.

By written contract of July 18, 1972, Appellant agreed to sell and Appellee agreed to purchase a 3.01 acre tract of land for $165,000.00. By its terms, the contract stated, "Seller represents the site is presently zoned C–1, Commercial." In fact, 2.86 acres was zoned C–2, and .15 acre or approximately 5% of the tract was zoned R–4. Little significance is placed on the C–2 zoning. From the record it appears that the C–2 classification incorporated all allowable uses under C–1. The controversy in this case, and the basis for Appellee's rescission of the agreement, was the fact that a portion of the property was zoned R–4 which imposed more restrictions on the property than C–1.

The property in question was located on Shelbyville Road, and the price for the tract was based upon the front footage of the property on that road. The tract was rectangular in shape, except for a spur which extended into an adjoining parcel of land. The 2.86 acre rectangular-portion of the tract in question was zoned C–2, and the .15

spur had no frontage on Shelbyville Road, and it was otherwise land-locked.

On August 17, 1972, the Appellee made known to Mr. Thomas Fisher, president of Appellant's corporation, that he would not accept title by reason of the discrepancy in the zoning. The Appellee testified that his only reason for not closing the transaction was the zoning discrepancy. He affirmed that there was no other condition in the contract which was not complied with by the Appellant. The Appellee also stated that he did now know the "spur" was a part of the land, and that he decided not to comply with the contract when he was informed by his attorney that there was a "wedge" in the property which was zoned R–4, rather than C–1. He did not know how much of the property was not zoned for commercial purposes, but he testified that he envisioned there was a "pie-shaped kind of formation . . ." that was zoned R–4 and that this formed a "pie-shaped kind of deal going right through the piece of property." It was not until after he had tendered his cancellation of the contract that he discovered that it was only the "spur" that was zoned R–4.

All parties were aware of the fact that the property was the subject of a foreclosure action, and the property was subsequently sold at public auction on September 11, 1972.

Appellant brought suit to recover damages, namely the difference between the contract price and the price the land brought at the public auction. The only proof presented was that the property sold for $121,000.00 and that there was an additional $3,000.00 of court costs incurred because of the sale giving a total net loss to the Appellant of $47,000.00.

■ Conflicting evidence was presented as to whether or not the Appellee had knowledge of the R–4 zoning regulation prior to signing the contract. The Appellee had learned about the property through an advertisement and was otherwise represented by a real estate broker. The trial court, however, found that after the contract was signed "matters took their normal course until a point in time that it was discovered by the defendant, through his lawyers, that a small portion of the three acres, more precisely .15 acre, was zoned R–4, Residential." The Appellant argues that the Appellee's allegations of misrepresentation had no basis because there existed substantial evidence that the Appellee was fully aware of the facts before he executed the subject's sales contract. We must, however, take the finding by the court that the Appellee was not made aware of the R–4 zoning prior to executing the contract. Such a finding was not manifestly against the weight of the evidence.

The Appellant presents several arguments, but only one is decisive in this case. The Appellant argues that even if there was a misrepresentation within the written contract, such misrepresentation was not material. The trial court made no specific determination as to the materiality of the misrepresentation except to provide,

The written contract will stand as is, and the court will not tamper with its meaning. The contract speaks for itself .

. . .

By not accepting the various contentions of either side, the court will strictly rely on the contract itself.

■ This court will not attempt to decide in this case whether or not the misrepresentation regarding zoning was material or not. We do conclude, however, that the misrepresentation in this situation was not material per se. Generally, a misrepresentation regarding zoning will not be material per se unless the variance is such that the buyer will obviously be unable to use the property for its intended purposes. For a court to determine that a zoning discrepancy in a land contract is a material misrepresentation, it must make specific findings based upon evidence presented by an offended party seeking to rescind the contract or recover damages.

On several occasions the Kentucky Supreme Court has been faced with land purchase contracts in which the amount of land actually conveyed proved to be less than

that, specified in the contract. The case of *Wallace v. Cummins*, 334 S.W.2d 904 (Ky. 1960) is an example of the court's adoption of a standard whereby the court has refused to allow relief for misrepresentation, unless the deficiency in the land described in the contract is more than 10% of the total land being conveyed. Both rescission and damages have been denied. See also, *Parsons v. Lunsford*, 21 Ky.Law Rep. 1536, 55 S.W. 885 (1900); *Burkholder v. Farmers' Bank of Kentucky*, 23 Ky.Law Rep. 2499, 67 S.W. 832 (1902); and *Page v. Hogan*, 150 Ky. 726, 150 S.W. 801 (1912). The 10% rule, however, is based on the idea that in cases where sales are by the tract or where quantity is mentioned merely as descriptive the parties intended to take some risk on quantity. In other cases where the circumstances have made it plain that no risk was intended or could not be tolerated, or where sales were found to be truly by the acre, rescission or damages have been allowed. See, *Anthony v. Hudson*, 131 Ky. 185, 114 S.W. 782 (1908). An example of a situation where size could be vital and a variance material would be where a minimum size lot would be required for installing a septic tank. If a person purchased a lot to establish a dwelling where sanitation would require the installation of a septic tank, the purchaser should not be bound to the purchase contract, if the agreement called for conveyance of an amount of land equal to or greater than the minimum required and the area was deficient.

The Appellant argued that since the portion zoned R–4 represented only 5% of the total area, rescission should not be allowed, because it would not have been allowed if the spur had not existed. Even though zoning may relate to quality, whereas size relates to quantity, there is merit in the Appellant's argument. The evidence indicates that the Appellee based his price on the front footage facing Shelbyville Road. The Appellee did not even know the spur existed, and immediately prior to rescinding the contract, Appellee had a mistaken idea regarding the location of the R–4 area within the tract of land he was purchasing. The Appellee failed to investigate the facts for himself and relied primarily upon his agent and his attorney. Even the broker representing the Appellee testified as follows:

> This spur is immaterial. This spur neither enhances nor detracts from the use that the gentlemen was going to put this property to. Now, you go by primeage and by depth, and you have a fluke here of a spur. That didn't affect the way he was going to use it, not one bit.

It is elementary that a contract may not be rescinded unless the non-performance, misrepresentation or breach is substantial or material. The court does not look lightly at rescission, and rescission will not be permitted for a slight or inconsequential breach.

We will not speculate on whether or not a zoning change would ever have been granted, as was argued by the Appellant. Certainly, it could not have been accomplished before a transfer to the Appellee in light of the pending scheduled judicial sale. But, even assuming the zone could not have been changed, was the zoning discrepancy so material as to defeat the intended purposes for which the Appellee was buying the property? If the misrepresentation or mistake was not such as to defeat the object of the Appellee in making the agreement, then he should have purchased the property and sought damages for any provable diminution in value. The Appellee is now in the position where he must prove the materiality of the misrepresentation, and if he cannot prove such a fact by additional convincing evidence, the Appellee must be responsible for the reasonably foreseeable damages caused by his arbitrary rescission of the contract. We will leave the issue of materiality to be decided by the trial court on remand on the basis of all of the evidence.

As to the issue of damages, the Appellant claims $47,000.00. This was determined by deducting the foreclosure selling price of $121,000.00 from the contract price of $165,000.00 and adding the selling cost of $3,000.00 to the difference. As authority

for this method of computation, Appellant cites *Davis v. Lacy*, 121 F.Supp. 246 (E.D. Ky.1954). Regarding the subject of damages for breach of a real estate purchase contract, the Appellant cites that portion of the opinion which reads:

> The damages recoverable under the defendant's choice of remedy are measured by the difference between the purchase price which plaintiff agreed to pay and the amount received for the property at the second sale, and in addition "the cost and expense of the second sale." (Citing cases)

The citation is a general statement of law, but in this case the mere difference between the contract price and the net selling price is not totally applicable.

The general test for measuring such damages is the difference between the contract price and the actual or market value at the time of the breach, provided actual value is less than the contract price, and plus any actual and related costs. See *Graves v. Winer*, Ky., 351 S.W.2d 193 (1961), and *Furlow v. Sturgeon*, Ky., 436 S.W.2d 485 (1968). If a resale is made under conditions comparable to the conditions under which the contract was made, and within a reasonable time after the breach, the resale price would certainly be evidence of actual value, and the difference would be a proper measure and element of damages.

The resale of this property was within a reasonable time after the breach. The breach occurred on August 17, 1972 and the resale occurred on September 11, 1972. However, without supporting evidence to the contrary, a foreclosure sale is not comparable to a private sale nor is the selling price alone considered as competent evidence of actual or market value. The Appellant would need to prove the comparability. If this cannot be done, the question remains whether or not the Appellant may nevertheless recover all or substantially all of a loss such as in this case?

Where a large loss results from a rescission, the question of whether or not the misrepresentation prompting the rescission was material may still be in issue. But, the real question becomes whether or not the sizeable loss was caused by the zoning discrepancy or by some other reason, such as a resale by foreclosure? If the large loss was in fact caused by a misrepresentation relating to a 5% spur of land which was zoned R–4 rather than C–1, as advertised, then the misrepresentation was material enough to justify a rescission. On the other hand, if the proof regarding damages indicates little or no difference in value between the contract price and the actual value of the land due to a zoning variance, then the misrepresentation was immaterial, the rescission constituted a breach, and the Appellee should have completed the contract and sought damages rather than to arbitrarily rescind the contract and become liable to the Appellant for damages. For the foregoing reasons, the evidence regarding damages will be relevant and material to the trial court in determining the question of materiality of the misrepresentation.

The object of compensatory damages is to place the injured party in the same condition, so far as money can do so, in which he would have been if the contract had been duly performed. The injured party is entitled to all such damages as arise naturally from the breach of the rights which the contract was contemplated to assure. *Graves v. Winer*, supra. See also: Oleck, *Damages to Persons and Property*, §§ 80, 229, 237; pp. 59, 439, 448, and 77 Am.Jur.2d, pp. 614–617 (Vendor and Purchaser, §§ 489 and 491). Contracting parties do have rights, duties and liabilities between each other once they have entered into a contractual relationship. If, therefore, it is proven that the Appellee's rescission of the contract was an unjustifiable breach, the measure of the Appellant's damages may be all of the natural and foreseeable damages resulting from the breach up to a maximum of $47,000.00.

If the foregoing measure of damages is applied in this case, the Appellee may offset the damages by any amount proven to be a difference in the value of the property contracted for as zoned C–1 and

the value of the property as it existed as zoned C–2 and R–4, if the latter zoning produced a lesser value for the property than as advertised and contracted for. If the measure of damages is to be the difference in the contract price and the actual or market value, as stated above, the Appellee would not be entitled to any offset, as the basis for the offset, the zoning differences, would be considered in determining the contract and actual values.

 We have held in this action that the zoning discrepancy was not material per se. The appellee, therefore, had the burden of proving that his breach was justified because of facts not in the record which would have proven that the discrepancy was material to him. Civil Rule 52.04 was added after the appeal was taken in this case. The new rule would bar this court from remanding this action to the trial court for a finding of fact regarding the issue of materiality, since such finding was not requested by the appellee during the previous proceedings. We do not believe this court is bound by the new rule in this particular appeal, and rather than merely reverse the action and remand it for a finding of damages, we feel that in fairness to the appellee he should be given an opportunity to prove in what way the zoning discrepancy in this contractual agreement was material enough to justify his breach.

The judgment is reversed and remanded for further proceedings consistent with this opinion.

All concur.