**Ken LAWSON and Patricia Lawson, Appellants,**

v.

**Frank A. MENEFEE and Joyce A. Menefee, Appellees.**

No. 2003–CA–001070–MR.

Court of Appeals of Kentucky.

April 9, 2004.

Ed W. Tranter, Ft. Thomas, KY, for Appellant.

Donna K. McNew, Newport, KY, for Appellee.

Before JOHNSON, TAYLOR and VANMETER, Judges.

*OPINION*

JOHNSON, Judge.

Ken Lawson and Patricia Lawson have appealed from an order of the Campbell Circuit Court entered on April 22, 2003, which granted summary judgment to Frank A. Menefee and Joyce A. Menefee due to the lack of damages in this action involving the breach of a contract for the purchase of real property. Having concluded that there was no genuine issue as to any material fact and that the Menefees were entitled to judgment as a matter of law since the Lawsons did not show that they suffered damages recoverable for a breach of the real estate contract, we affirm.

On October 21, 2001, the Menefees executed a written contract to purchase residential real estate from the Lawsons for $265,000.00. The purchase contract contained the typical provisions making

the sale contingent on inspection of the residence, repair of defects, and the buyers' obtaining financing. It also provided for closing on or before November 30, 2001. On October 28, 2001, the parties executed an addendum listing various repairs that the parties agreed would be made pursuant to the inspection and repair provisions of the purchase contract. On November 6, 2001, the Menefees sent a letter to the Lawsons stating that they were invoking their right to cancel the purchase contract under the contingency provisions dealing with repairs to the property. On November 12, 2001, the Lawsons notified the Menefees that the agreed upon repairs had been completed and were ready for a follow-up inspection, but the Menefees refused to participate in the new inspection. On November 13, 2001, the Menefees told the Lawsons by letter that they would not attend a closing or negotiate a sale any further. On November 17, 2001, the Menefees sent a letter to the Lawsons's attorney requesting a release from the purchase contract. In March 2002 the Lawsons sold the property to a third party for $274,000.00, or $9,000.00 more than the purchase price under the contract with the Menefees.

On December 14, 2001, the Lawsons filed a complaint for breach of contract and fraud against the Menefees. On March 5, 2002, the Lawsons filed a motion for summary judgment pursuant to CR [1] 56 on the question of liability for breach of contract. The Menefees filed a response asserting that factual issues existed on whether they complied with the contract provisions by exercising their right to cancel the contract due to the Lawsons's failure to give reasonable assurances that all the repairs

to the house would be completed within the required time frame. On April 11, 2002, the trial court denied the Lawsons's motion for summary judgment. The Lawsons filed a motion for reconsideration of the denial, which the trial court likewise denied.

On July 29, 2002, the Lawsons filed a motion *in limine* requesting a ruling on whether the Menefees were entitled to an offset or credit against any damages for the amount of the sale price the Lawsons received from the third-party buyer that exceeded the contract price between the parties. The Lawsons asserted that the consequential damages related to the breach should not be offset by any gain they achieved in reselling the property. After a brief hearing, the trial court ruled that the Menefees were entitled to an offset or credit for any gain over the contract price the Lawsons had received in reselling the property.

On March 10, 2003, the Menefees filed a motion for summary judgment which asserted that even if they had breached the contract, the Lawsons had failed to establish any damages. The Menefees stated that the Lawsons had suffered no actual damages since the amount of compensatory damages identified by the Lawsons was less than $9,000.00, *i.e.*, the amount the Lawsons had received for the sale of the property which was in excess of the contract price with the Menefees. The Menefees also stated that while the Lawsons alleged fraud with respect to their cancellation of the contract, they could not recover punitive damages as a matter of law for breach of contract.[2] In their response, the Lawsons objected to the trial court's earlier ruling permitting a setoff of the consequential damages against the excess sale

---

1. Kentucky Rules of Civil Procedure.

2. *See* Kentucky Revised Statutes (KRS) 411.184(4).

price they had received, and disputed whether they had a right to collect punitive damages.

On April 22, 2003, the trial court granted the Menefees's motion for summary judgment based on the lack of damages after applying the offset or credit for the excess amount of $9,000.00. The court also ruled that the Lawsons could not recover punitive damages since any alleged fraud occurred after the cancellation or breach of the contract. This appeal followed.

The Lawsons claim the trial court erred by granting summary judgment to the Menefees. The standard of review on appeal when a trial court grants a motion for summary judgment is whether the trial court correctly found there was no genuine issue as to any material fact and that the moving party was entitled to judgment as a matter of law.[3] The movant bears the initial burden of convincing the court by evidence of record that no genuine issue of fact is in dispute, which then shifts the burden to the party opposing summary judgment to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial."[4] The court must view the record in a light most favorable to the non-movant and resolve all doubts in his favor.[5] Summary judgment is not considered a substitute for a trial, so the trial court must review the evidentiary record not to decide any issue of fact, but to determine if any real factual issue exists and whether the non-movant cannot prevail under any circumstances.[6] An appellate court need not defer to the trial court's decision on summary judgment and will review the issue *de novo* since factual findings are not at issue.[7]

In the case *sub judice*, the trial court's decision was predicated on the belief that the excess amount received by the Lawsons on the sale of the property was greater than the amount of consequential damages sought by the Lawsons. The Lawsons have not disputed this fact on appeal, but rather challenge only the legal issue of whether the court properly allowed the excess amount to be set off or credited against the compensatory damages.[8] Since only legal issues are in-

3. *Palmer v. International Association of Machinists & Aerospace Workers, AFL–CIO*, Ky., 882 S.W.2d 117, 120 (1994); *Stewart v. University of Louisville*, Ky.App., 65 S.W.3d 536, 540 (2001); CR 56.03.

4. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 482 (1991). *See also City of Florence, Kentucky v. Chipman*, Ky., 38 S.W.3d 387, 390 (2001); and *Lucchese v. Sparks–Malone, P.L.L.C.*, Ky.App., 44 S.W.3d 816, 817 (2001).

5. *Commonwealth v. Whitworth*, Ky., 74 S.W.3d 695, 698 (2002); *Lipsteuer v. CSX Transportation, Inc.*, Ky., 37 S.W.3d 732, 736 (2000); *Commonwealth, Natural Resources & Environmental Protection Cabinet v. Neace*, Ky., 14 S.W.3d 15, 19 (2000).

6. *Steelvest*, 807 S.W.2d at 480; *Barnette v. Hospital of Louisa, Inc.*, Ky.App., 64 S.W.3d 828, 829 (2002).

7. *See Lewis v. B & R Corp.*, Ky.App., 56 S.W.3d 432, 436 (2001); *Barnette, supra* at 829.

8. The record indicates that the Lawsons identified consequential damages consisting of $7,411.43 for interest payments on a first and second mortgage between the date for closing on the purchase contract with the Menefees (November 2001) and the closing date on the sale of the property to the third party (March 2002), and $2,087.00 for the second inspection and repairs made to the property. In their summary judgment motion, the Menefees argued the amount for repairs and the inspection costs could not be recovered since they would have been incurred regardless of any breach. Despite the absence of an explicit ruling on this question, the Lawsons have not challenged the fact that the excess amount they received on the sale of the property exceeded their claim for consequential damages. Consequently, there is no genuine issue

volved, summary judgment was available and we will review the trial court's legal ruling *de novo.*

The Lawsons contend that while there are no Kentucky cases directly on point, Kentucky case law and public policy considerations militate against allowing any gain in the resale of real property to be credited or offset against consequential damages. Kentucky has basically adopted the majority rule regarding damages for the breach or recision of a real estate contract. In *Furlow v. Sturgeon,*[9] the seller sold the property to a third party for the exact same amount as the contract price after the initial purchaser repudiated and defaulted on the contract due to an encumbrance on the title. After finding the breach illegal, the Court stated, "the usual measure of damages for a breach by the vendee of a contract for the sale of land is the difference between the contract price and the actual value of the land on the date of the breach, *if the actual value is less than the contract price*" [emphasis added].[10] The Court further held that the seller may recover as compensatory damages, "such sum in damages [that] ... arose naturally from the breach of the rights which that contract was contemplated to assure."[11]

In *Evergreen Land Co. v. Gatti,*[12] following repudiation of and default on the contract by the initial purchaser due to a discrepancy in the description of the zoning status of the property, the seller sold the disputed property at a foreclosure sale for $44,000.00 less than the contract price

and it incurred an additional $3,000.00 in costs associated with the sale. The Court cited *Furlow* in restating that the measure of damages "is the difference between the contract price and the actual or market value at the time of the breach, *provided actual value is less than the contract price,* and plus any actual and related costs" [emphasis original].[13] However, the Court held that the amount received from a subsequent sale of real property following repudiation is merely evidence of the actual value at the time of the breach and the relevancy of that evidence would depend on whether the sale occurred under conditions comparable to those of the original contract and within a reasonable time after the breach.[14] The Court further stated that "[t]he object of compensatory damages is to place the injured party in the same condition, so far as money can do so, in which he would have been if the contract had been duly performed. The injured party is entitled to all such damages as arise naturally from the breach of the rights which the contract was contemplated to assure."[15]

The Lawsons's position focuses on the language in *Furlow* and *Evergreen Land Co.* which defined the measure of damages as the difference between the contract price and the actual value of the land on the date of the breach *if the actual value is less than the contract price.* They argue this language suggests that any profit or gain upon resale should not be included in determining damages. We be-

---

of material fact in dispute. The Lawsons also have not challenged the trial court's decision that they are not entitled to punitive damages.

9. Ky., 436 S.W.2d 485 (1968).

10. *Id.* at 487.

11. *Id.* The Court indicated that consequential damages could include lost rentals.

12. Ky.App., 554 S.W.2d 862 (1977).

13. *Id.* at 866.

14. *Id.*

15. *Id. See also* 77 Am.Jur.2d *Vendor & Purchaser* §§ 575 and 579 (1997).

lieve the correct interpretation of this language is merely a restatement of the traditional rule of damages for breach of a contract based on the loss to the seller of the benefit of the bargain determined by comparing the contract price and actual value on the date of the breach. The loss of the bargain consists of any deficiency in the actual value compared to the contract price.[16] Conversely, if the actual value exceeds the contract price, there is no loss of the bargain caused by the breach.[17] Furthermore, the Court in *Evergreen Land Co.* held that damages are not limited to a restrictive calculation based on the contract price and actual value by allowing the seller to recover consequential damages despite the absence of any difference between the contract price and actual value at the time of the breach. The holding in *Evergreen Land Co.* that both consequential damages and the difference in the contract price and actual value should be considered in measuring damages for breach of a real estate contract supports an approach contrary to that proposed by the Lawsons.[18]

Indeed, other cases have recognized that recovery of consequential damages may be offset or credited against any profit realized on the resale of the property following a breach. In *Smith v. Mady*,[19] the Madys agreed to purchase the Smiths's residence for $205,000.00, but they defaulted on the contract. A few days later, the Smiths resold their property for $215,000.00. Upon suit by the Smiths, the trial court awarded them consequential damages of $2,648.34 [20] and refused to offset these damages against the increased resale proceeds. As in Kentucky, under California law, a seller may recover damages consisting of the loss between the contract price and the actual value at the time of the breach plus consequential damages. The California appellate court reversed the trial court based on the general rule that the vendor of real property should not be placed in a better position by the buyer's default.[21] The Court stated that there was no reason to deprive the defaulting purchaser of the benefit of a higher price on resale while requiring the purchaser to pay the costs to the seller of continued ownership following the breach. The Court held that where the resale occurs within a relatively short time sufficient to conclude that the resale price reasonably reflected the actual value of the property at the time of the breach, the consequential damages should be offset by the higher resale price.[22]

In addition, we note that the drafters of the Uniform Land Transactions Act advo-

**16.** *See also Hickey v. Griggs,* 106 N.M. 27, 738 P.2d 899, 902 (1987) (discussing benefit of bargain rule with breach of real estate contract as difference in contract price and market value at time of breach).

**17.** *See, e.g., Spurgeon v. Drumheller,* 174 Cal. App.3d 659, 664, 220 Cal.Rptr. 195 (1985) (stating if the vendor resells the property at a price higher than the value of the contract, there are no longer any loss of bargain damages).

**18.** *See also Davis v. Lacy,* 121 F.Supp. 246 (E.D.Ky.1954) (allowing both loss on resale plus costs of resale); and *McBrayer v. Cohen,* 92 Ky. 479, 18 S.W. 123 (1892).

**19.** 146 Cal.App.3d 129, 194 Cal.Rptr. 42 (1983).

**20.** These damages included costs of insurance, gardening, property taxes, utilities, and mortgage interest between the time of the default and subsequent sale.

**21.** *Id.* at 133, 194 Cal.Rptr. 42.

**22.** *See also Bond v. Broadway,* 607 So.2d 865 (La.App.1992); and *Askari v. R & R Land Co.,* 179 Cal.App.3d 1101, 225 Cal.Rptr. 285 (1986).

cate a unified calculation calling for the accounting of consequential expenses and gains upon the resale of property for breach of a real estate contract similar to the approach taken with personal property under the Uniform Commercial Code.[23] Uniform Land Transactions Act § 2–504(a) states:

> If a buyer wrongfully rejects, otherwise commits a material breach, or repudiates as to a substantial part of the contract (Section 2–502(a)), the seller may resell the real estate in the manner provided in this section and recover any amount by which the unpaid contract price and any incidental and consequential damages (Section 2–507) exceeds the resale price, less expenses avoided because of the buyer's breach.

██ The Lawsons assert that public policy reasons disfavor allowing a defaulting purchaser to offset the consequential damages against the higher resale price. The Lawsons contend the Menefees were the wrongdoers and should not be permitted to benefit from their diligence and good fortune in locating a third-party buyer who paid a higher price for the property. This argument, however, conflicts with the general principles underlying damages for breach of contract reflected in the loss-of-the-bargain rule. To allow the Lawsons to retain the entire gain on the resale of the property, and to recover the consequential damages, would represent a windfall to them and would not place them in the same position as if the contract had not been breached.

Although *Mady* and the Uniform Land Transactions Act are not binding on this Court, we believe they are consistent with the law of Kentucky and represent the proper approach in the situation involved in this case. As a result, we hold that the trial court did not err in granting summary judgment to the Menefees based on a lack of damages since the amount received by the Lawsons upon resale of the property in excess of the price of the contract with the Menefees was greater than the amount of the consequential damages recoverable by the Lawsons.

For the foregoing reasons, the judgment of the Campbell Circuit Court is affirmed.

ALL CONCUR.

---

23. *See* U.C.C. § 2–706.