**Anne HARVEY, Appellant**

v.

**John Conrad ROBINSON, Appellee**

**NO. 2015-CA-000915-MR AND NO. 2015-CA-001073-MR**

Court of Appeals of Kentucky.

MARCH 3, 2017; 10:00 A.M.

BRIEFS FOR APPELLANT: Anita M. Britton, Lexington, Kentucky.

BRIEF FOR APPELLEE: Carroll M. Redford, III, Carl D. Devine, David T. Faughn, Lexington, Kentucky.

BEFORE: COMBS, JONES, AND J. LAMBERT, JUDGES.

## OPINION

LAMBERT, J., JUDGE:

Anne Harvey has appealed from two orders of the Fayette Circuit Court denying her motion for a judgment for diminution of value of real property she received as the result of a property settlement in her dissolution action with her former husband, John Conrad Robinson (Con). Finding no error in the circuit court's rulings, we affirm.

Anne and Con were married on December 21, 1980, in Lexington, Kentucky. "During their marriage, Con owned and operated a business that sold topsoil, compost, and mulch to Lexington, Kentucky, area customers and that later engaged in wood and concrete recycling. Anne worked as chief financial officer for the business and handled the parties' corporate and personal finances." *Robinson v. Robinson*, 2003 WL 22871933, at *1 (No. 2002-CA-001769-MR) (Ky. App. Dec. 5, 2003) (footnote omitted). Anne filed a petition to dissolve their marriage on April 17, 2000.

On June 13, 2002, following an evidentiary hearing, the court entered its findings of fact and conclusions of law setting forth the statutory basis to dissolve the marriage. The same day, the court entered its supplemental findings of fact and conclusions of law (supplemental order) addressing the disputed issues between the parties, including the division of marital property, child support, and maintenance.[1] As pertains to this appeal, the court addressed disposition of the parties' property on Harrodsburg Road in paragraph 2:

Prior to the hearing, the parties agreed that the equity value of the Harrodsburg Road property was $856,000. As the primary residence of [Anne] and the parties' children, this property shall be awarded to [Anne], including the responsibility for any debt on said property. Within thirty (30) days of the entry of the decree, [Anne] shall cause [Con] to be removed from liability for any such indebtedness. In addition, within thirty (30) days of the entry of the decree, [Con] shall cause all business equipment and material to be removed from the property at [Con's] expense, and shall have any landscape returned, in a good and workmanlike manner, to its approximate original condition in keeping with the landscape of a residence in Lexington, Fayette County, Kentucky.

The parties agreed that all of the marital assets were to be divided equally. The total value of the marital assets, including the company, real property, and bank accounts, was $4,525,637.00. Each party was to receive a total of $2,262,818.50 in assets. In order to equalize the assignment of the assets, the court ordered Con to make a cash payment to Anne in the amount of $288,043.50. Con appealed from the court's supplemental order, alleging errors related to the valuation of the marital business, the division of marital property, and the interest rate imposed. This Court affirmed the family court in an opinion rendered December 5, 2003. The opinion became final on October 18, 2004, after the Supreme Court denied discretionary review.

---

1. The court entered the decree of dissolution of marriage on August 12, 2012, incorporating the terms of the supplemental order.

While the appeal was still pending, on December 2, 2002, Anne moved to enforce the supplemental order, arguing that Con had refused to agree to execute any documents needed to enforce its terms. The court granted the motion by order entered January 3, 2003. The court ordered Con to comply with the terms of the supplemental order by January 6, 2003, including executing quitclaim deeds on the properties and paying Anne all sums due to her at a rate of 12% interest. Con was later ordered to liquidate his IRA to pay Anne a portion of what she was owed pursuant to the decree, followed by monthly payments. In December 2006, the court transferred Con's IRA to Anne. In February 2007, the court ordered Con to execute an IRA Distribution Request in order to have his IRA funds liquidated and transferred to Anne.

On January 20, 2015, Anne moved the court to enforce the court's 2002 supplemental order and for a judgment, interest, and attorney fees. She said that by early 2007, she had only received part of the cash she had been awarded. She stated that inclusive of interest, she was owed $456,271.22. Anne requested that the court order Con to pay that amount to her by the date of the hearing or be placed in jail. Related to the Harrodsburg Road property, Anne reminded the court that Con was to return any landscape to its approximate original condition in keeping with residential landscapes in Lexington. Anne went on to state that in 2013, she entered into a contract with Ball Homes to sell the Harrodsburg Road property for $3.55M. In reviewing the property, Ball Homes discovered waste material that had caused remediation of the land. The purchase price was renegotiated to $3.3M, $250,000.00 less than the original purchase price. Therefore, Anne requested the court order Con to reimburse her in the amount of $250,000.00 for the diminution in value of the property. She further requested at-

torney fees and interest on the judgment. Anne included a report of sampling activities on the property prepared by Childress & Associates, LLC, dated March 29, 2013. Trenches were dug to determine what fill materials the property contained, and these materials included concrete, gravel, brick, asphalt, wire, wood, plastic, roofing materials, piping, insulation, burnt wood, rebar, tree limbs, insulation and other building materials, conduit, glass, Styrofoam, tires, and shot rock.

In his response, Con argued that Anne had already received a judgment ordering repayment of the funds she was seeking and that she received $3.3M for the sale of the real estate of which she had been the sole owner since 2002. Con suggested that Anne should have used the judgment collection process or sought a contempt ruling, which she had not done. Con also argued that he had complied with the terms of the supplemental order by removing his business equipment from the Harrodsburg Road property and returning the landscape for that portion to its original condition. The portion of land Anne complained of in her motion was never used for Con's business. Con went on to argue that Anne's motion was barred by the doctrines of waiver, laches, and equitable estoppel. In an affidavit attached to his response, Con explained that the portion of the property containing waste material was never used for his business, that they had never discussed that the front part of the property (where the waste material was found) needed to be addressed, and that Anne had never contacted him regarding the 2013 sale to address the issue.

In reply, Anne disputed Con's statements that the supplemental order was limited to a portion of the property and that he did not use the affected portion of the property for his business.

On April 10, 2015, the court entered an order related to the cash judgment that was due. The parties agreed that Con owed Anne the amount of $456,271.22 as of January 20, 2015, including interest and with a credit for payments Con had made. The court scheduled a hearing on the Harrodsburg Road property issue for May 4, 2015.

At the outset of the hearing, Anne's counsel indicated she was requesting that the court hold Con in contempt for failing to comply with the supplemental order regarding payment of the cash award. She requested attorney fees for her efforts to collect the judgment since 2002. Anne was also seeking the diminution in value of the Harrodsburg Road property due to the waste left on the property. Con's attorney pointed out that the cash amount due had been reduced to a judgment, which Anne had the opportunity to collect. In addition, Con had complied with the order to remove the business equipment and replace the landscaping.

Lee Fields was the first witness to testify. He worked for Ball Homes on the land development team, and he inspected the Harrodsburg Road property for purposes of a multi-family site. He looked for sinkholes, earth that had been moved, past buildings, creeks, springs, and anything that would raise a flag. During his inspection, he found a spring at the southern corner, a metal barn-type building, a change in the topography past the barn showing that material had been removed, and an unnatural fill area. His concerns were whether there was enough good soil to build on the site and what bearing the roads and buildings would have. Environmental and geotechnical testing was conducted, and an area was designated as trash because it could not be built on unless it was excavated and replaced. Mr. Fields provided this information to the engineer, who would have calculated the price of the property with this in mind. Mr. Fields was not involved in the pricing or reduction in the pricing of the property. He defined "original condition" as the soil being the same from the top to the rock, and he stated that he did not know when these waste items were placed on the property.

Anne testified next. She stated that she was concerned, based upon Con's business as an excavator, that she did not know what was in the front portion of the Harrodsburg Road property at the time of the dissolution. She moved out of the residence on that property in 2008, but she continued to own the property for several more years. There had not been any changes to the property after Con removed his business from the site. She originally entered into a contract to sell the property to Ball Homes for $3.55M. The next step relative to the negotiations for the property was a telephone call Anne received from Ray Ball in February 2013. He told her his backhoe had found debris and that he needed to do environmental testing. Mr. Ball provided the reports to her of the investigations and told her it would cost him $500,000.00 to remediate the land. He proposed splitting the amount between them and reducing the purchase price by $250,000.00. She did her own calculations to determine whether this proposal was fair. Anne ultimately agreed to reduce the contract amount for the sale to $3.3M and sold the property for this amount. Anne proposed a conceptual plan to Con in August 2013 to pay off the amount she was due and to include the $250,000.00 remediation costs. Con said he would think about it. Anne said she had been warned by an employee that there was waste in the field that had been there before the marriage.

Con was the final witness to testify. He purchased the Harrodsburg Road property

in 1976, prior to his marriage to Anne in 1980. He operated a business in the back section of the property. He had not used the area of the property where the waste was found. Con had removed items and regraded the portion of the property where he conducted his business, per the court's supplemental order. He had never been contacted by Anne about removing items from the property. He also testified that he had never buried any items on the property, other than hauling soil in.

At the conclusion of the hearing, the court pointed out the large increase in value of the property between 2002 and the time Anne sold it in 2013. Therefore, the court did not believe Con could be in contempt for not having done what he was supposed to do, and it did not have to reach the defenses of laches, estoppel, or waiver. The court also noted that the supplemental order indicated the property was to be residential and that any cleanup was not related to a future commercial sale. It was meant to be in a condition for Anne to continue to live in the residence on the property. The court denied Anne's motion related to the diminution in value of the property and to any attorney fees as to that part of the motion. However, the court did find Con in contempt for failing to pay the cash amount that was due to Anne. The court permitted Anne's attorney to provide information about her fees so that it could award an appropriate amount.

On May 14, 2015, the court entered a written order memorializing its oral ruling on the Harrodsburg Road property and attorney fees issues. The court denied the motion for the following reasons:

1. Mrs. Harvey makes a claim that the property was valued at $3,550,000.00, pursuant to a contract in March 2013. The property was eventually sold for $3,300,000.00, and the closing was conducted in May 2014. She alleges that the sole reason for her $250,000.00 loss was that her ex-husband had failed to comply with the Divorce Decree when he did not "have any landscape returned, in a good and workmanlike manner, to its approximate original condition in keeping with the landscape of the residence, in Fayette County, Kentucky." Her basic allegation was that debris was found underground and subsequently removed, presumably by Ball Homes, all of which diminished the value of the property, and Mr. Robinson should be responsible therefore [sic].

2. The Court finds as a matter of law and fact that the Court's original language is clear that Mr. Robinson's responsibility was to make the property landscape adequate for the landscape of a "residence". There was no mention about the resale of the property for development or commercial value. In fact, it appears that the original value of the property at the time of the divorce was $856,000.00. The property quadrupled in value over the eleven years since the divorce, and instead of a sale for $856,000.00, Mrs. Harvey ultimately received $3.3 million dollars. As the Court stated in open court, it is probable that the $250,000.00 so-called loss in value would not have been a complaint if Mr. Robinson had complied with his responsibility to pay cash to Mrs. Harvey after the divorce. Instead, he has paid virtually nothing, and still owes her over $450,000.00.

4. The Court suspects that her legitimate frustration over not being paid those sums has led to the filing of this action seeking the $250,000.00 on the value of the Harrodsburg Road property.

5. At the time of the final divorce, the Judge found the total marital estate to

be approximately $4,500,000.00. The only asset that ended up on Mr. Robinson's side [of] the ledger was his company, valued at $3.6 million. Mrs. Harvey received the Harrodsburg Road property valued at $856,000.00. Mr. Robinson was ordered to pay $288,000.00 in cash to Mrs. Harvey as a part of the Final Settlement. He has never paid that sum. It appears the primary asset of the husband after the divorce, the company, became severely devalued, while the primary asset of the wife, the Harrodsburg Road property, quadrupled in value after the divorce.

6. There is no basis in law or fact for holding Mr. Robinson responsible for the sale price ultimately. Even if Mrs. Harvey did have a legitimate complaint, there are several principles which operate to bar her from any recovery. Waiver, estoppel, and latches all seem to apply. If she believed that Mr. Robinson had not returned the property to its proper condition after the divorce, she should have complained ten years ago. She did not, and she is barred therefore from any recovery. Likewise, attorney's fees for the collection of that debt obviously are not to be awarded either.

The court went on to note that Con had been in default and in contempt of court for other issues during the litigation and ordered the parties to submit affidavits to support the payment of attorney fees for Con's failures to comply. Anne's attorney filed an affidavit indicating that her legal fees from January 1, 2015, forward amounted to $3,086.50. Including amounts awarded in the past that were not paid, the total due was $4,509.00.

On June 26, 2015, the court ordered Con to pay fees to Anne's attorney in the amount of $3,000.00 on or before July 30, 2015. Anne appealed separately from both the May 14, 2015, and the June 26, 2015, orders, asserting that the circuit court erred in denying her motion for a judgment awarding her the diminution in value of the Harrodsburg Road property. These appeals have been consolidated for all purposes.

█ Our first consideration is the proper standard of review we must apply in this case. Anne contends that our review is *de novo* because this appeal addresses the application of law (a prior court order), citing to *Western Ky. Coca-Cola Bottling Co., Inc. v. Revenue Cabinet*, 80 S.W.3d 787, 790 (Ky. App. 2001). On the other hand, Con contends that this involves the interpretation and enforcement of the court's own order, which requires a reviewing court to give deference to that interpretation unless it is manifestly unreasonable, citing to *Kendrick v. Bland*, 931 F.2d 421, 423 (6th Cir. 1991) ("The District Court's interpretation of its own order is certainly entitled to great deference."), and other federal cases. Both Anne and Con cite to *In re Nat'l Gypsum Co.*, 219 F.3d 478, 484 (5th Cir. 2000), which provides that a reviewing court "should review *de novo* the purely legal issues ... but should defer to the [lower] court's reasonable resolution of any ambiguities in those documents." Accordingly, it is up to the lower court to determine whether any ambiguity exists in its own orders. We agree with Con that as a reviewing court, we owe deference to the circuit court's interpretation of its own order, even if the judge who entered the supplemental order is not the same judge who entered the orders on appeal.

█ Moving on, we shall consider whether the circuit court's interpretation of its supplemental order was correct. The provision at issue is found in paragraph 2:

Prior to the hearing, the parties agreed that the equity value of the Harrodsburg Road property was $856,000. As the pri-

mary residence of [Anne] and the parties' children, this property shall be awarded to [Anne], including the responsibility for any debt on said property. Within thirty (30) days of the entry of the decree, [Anne] shall cause [Con] to be removed from liability for any such indebtedness. In addition, within thirty (30) days of the entry of the decree, [Con] shall cause all business equipment and material to be removed from the property at [Con's] expense, and shall have any landscape returned, in a good and workmanlike manner, to its approximate original condition in keeping with the landscape of a residence in Lexington, Fayette County, Kentucky.

Anne argued that this provision required Con to remove all of the buried waste from the entire property, while Con argued that it required him to only remove material from the part of the property where he had his business equipment and restore that part to the landscape of a Lexington residence. The court found the language of the provision makes clear that Con's "responsibility was to make the property landscape adequate for the landscape of a 'residence.' There was no mention about the resale of the property for development or commercial value." We agree with this interpretation, and there is no real dispute that Con removed his business equipment and material and returned that portion of the property to its original residential condition. This interpretation is not manifestly unreasonable, and even applying a *de novo* review, we perceive no error in this interpretation. Therefore, we must uphold the circuit court's ruling.

Furthermore, we disagree with Anne that the circuit court relied upon speculation in support of its ruling. While the circuit court certainly mentioned its beliefs that Anne filed the diminution in value motion due to frustration in seeking her cash award from Con and that Con's business had become severely devalued, those factors were not the basis for the ultimate decision. And the portion of the property of which Anne complained had nothing to do with the area referred to in the provision of the supplemental order; the provision addressed the area where Con had his business equipment and material, and it was that portion that had to be returned to its original condition in accordance with the landscape of a Lexington residence. Therefore, Anne's argument that there was no evidence presented regarding a regular landscape in Lexington has no bearing in this case. In addition, the court did not base its decision on application of the doctrines of waiver, laches, or estoppel. It merely stated that those doctrines would operate to bar Anne from recovery if she had a legitimate complaint, which it had already held she did not.

 Finally, we must agree with Con that Anne failed to introduce proof of her damages. In *Young v. Vista Homes, Inc.*, 243 S.W.3d 352, 366 (Ky. App. 2007), this Court stated the law as follows:

> For misrepresentation, a plaintiff is allowed the diminution in fair market value or a reasonable cost of repair which is allowed to measure a diminution in fair market value. *Evergreen Land Co. v. Gatti*, 554 S.W.2d 862, 865 (Ky. App. 1977). For the code violation, a plaintiff is allowed either the cost of repair to bring the property up to code compliance or payment of the diminution in fair market value of the property because of code infractions, whichever is less. [*Real Estate Marketing, Inc. v. Franz*, 885 S.W.2d 921, 927 (Ky. 1994)].

Damages are to be measured at the time of the wrong. *See Evergreen Land Co. v. Gatti*, 554 S.W.2d 862, 866 (Ky. App. 1977) ("The general test for measuring such damages is the difference between the con-

tract price and the actual or market value at the time of the breach, provided actual value is less than the contract price, and plus any actual and related costs."). Here, the time of the alleged wrong was in 2002, when the supplemental order was entered and Con was ordered to remove his business equipment and material and return that portion of the property to its original condition. At that time, the parties agreed that the Harrodsburg Road property was worth $856,000.00. Anne sold the property in 2014 for $3.3M, much more than the property's value in 2002. Had the court's original supplemental order and Anne's sale of the property to Ball Homes happened contemporaneously and she was forced to sell the property for less than its agreed upon value of $856,000.00, she might have had a viable claim. Twelve years later and with a much larger valued property, she does not.

We shall only briefly address Con's argument that the circuit court erred in granting Anne's motion for attorney fees. Not only were the fees awarded by the circuit court not related to the diminution of value issue, but Con failed to appeal this ruling. Thus, his argument is not properly before the court.

For the foregoing reasons, the orders of the Fayette Circuit Court are affirmed.

ALL CONCUR.