RENDERED:  SEPTEMBER 13, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0568-MR

MATTHEW WARD                                                       APPELLANT


                  APPEAL FROM MUHLENBERG CIRCUIT COURT
v.                        HONORABLE BRIAN WIGGINS, JUDGE
                            ACTION NO. 21-CI-00453


CHAD LERTORA AND RE/MAX
REAL ESTATE EXECUTIVES                                 APPELLEES

AND

NO. 2023-CA-0587-MR

CHAD LERTORA                                      CROSS-APPELLANT


        CROSS-APPEAL FROM MUHLENBERG CIRCUIT COURT
v.                        HONORABLE BRIAN WIGGINS, JUDGE
                            ACTION NO. 21-CI-00453


MATTHEW WARD                                     CROSS-APPELLEE


OPINION
AFFIRMING

BEFORE:  EASTON, GOODWINE, AND TAYLOR, JUDGES.

EASTON, JUDGE:   These appeals involve a claim by a realtor to a buyer's premium resulting from an auction (No. 2023-CA-0568) and a seller's claim to an earnest money deposit (No. 2023-CA-0587) for a residential real estate sale which did not close.  By summary judgment, the circuit court determined that Matthew Ward ("Ward"), the defaulting buyer, owed the buyer's premium to RE/MAX Real Estate Executives ("RE/MAX") but did not owe the earnest money deposit to the property owner, Chad Lertora ("Lertora").  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

The controlling facts are not disputed.  Lertora owned a house and surrounding sixty acres with an address of 375 Cartwright Lane, Drakesboro (the "Property").  Lertora entered into an auction agreement with RE/MAX to conduct a public auction for the Property to be sold to the highest bidder. The auction would have a 7% buyer's premium added to the final bid to determine the overall sales price of the Property.

RE/MAX advertised the Property through flyers, which provided notice of the buyer's premium as well as the "as is" and no warranty nature of the sale.  RE/MAX auctioned the Property on August 28, 2021.  Ward was the highest bidder at $424,250.  Lertora and Ward entered into a form real estate contract (the

"Contract") the next day memorializing the terms of Ward's purchase of the Property. The Contract again emphasized that the Property was being sold "as is" and "subject to all easements and restrictions recorded and unrecorded."

Pursuant to the Contract, in addition to the bid price, Ward was to pay RE/MAX's buyer's 7% premium of $20,750 for a total price of $445,000. Ward was further required to make a non-refundable earnest money deposit of $44,500 to a RE/MAX escrow account, which he never did. Section 14 of the Contract says: "Should the Buyer fail to perform on any of the terms and conditions of this contract, Seller may seek specific performance and all reasonable attorney fees shall be paid by defaulting party." Lertora did not seek specific performance, and we are not in a position to review claims for attorney's fees as the circuit has not yet determined them. Section 16 provides: "Earnest deposit is non-refundable and to be paid to the seller if buyer defaults on closing."

Closing on the Property was scheduled for October 8, 2021. Ward did not close. Ward claimed some issue with mineral rights for the property. Such rights were a matter of record for Ward to discover before he placed a bid on property sold as is and with no warranties. Ward had no legitimate basis for default.

Lertora sold the Property by contract signed two weeks later on October 22, 2021, to another buyer for $489,000. Denny Pendley of RE/MAX

represented Lertora in this subsequent transaction as his private real estate agent. This later transaction did close. Pendley was paid a 3% commission by Lertora for that work.

Lertora and RE/MAX filed an action against Ward in Muhlenberg Circuit Court for breach of contract. Lertora argued he was entitled to recover the $44,500 earnest money deposit, and RE/MAX argued it was entitled to the buyer's premium in the amount of $20,750.

The parties engaged in discovery. Lertora and RE/MAX moved for summary judgment on their respective claims for the earnest money deposit, the buyer's premium, and attorney's fees. Ward filed his own Motion for Summary Judgment. Ward argued Lertora was not entitled to the earnest money deposit because Lertora quickly sold the Property for a higher price and thus had sustained no actual damages. Ward argued RE/MAX suffered no damages as it still received a commission when the Property later sold for $489,000.

After considering the competing summary judgment positions, the circuit court issued an Opinion and Order. The court denied Lertora's motion on the issue of the earnest money deposit and instead granted judgment in favor of Ward on that issue. The court determined that the earnest money deposit, even if intended as a liquidated damages provision, was not recoverable due to the

Property being sold without delay and for an amount in excess of the sales price initially agreed upon by Lertora and Ward.

Summary judgment was granted to RE/MAX on the issue of the buyer's premium ($20,750). The court held that the buyer's premium was expressly enumerated in the Contract and represented "profit" to RE/MAX that was contemplated by the parties and reasonably certain to occur. The court reasoned the buyer's premium was earned through RE/MAX's work related to the auction, and this work was separate and distinct from any other commission received from the later transaction that closed. The circuit court left the award of any attorney fees and costs for future determination.

Ward then filed a Motion to Alter, Amend or Vacate the court's Opinion and Order. The court denied Ward's motion. Record ("R.") at 240. Ward then filed his appeal about the buyer's premium, and Lertora filed a cross-appeal about the earnest money deposit.

## STANDARD OF REVIEW

"The standard of review of a trial court's granting of summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Summary judgment is proper when it appears that it would be impossible for the adverse party to produce evidence at trial warranting a judgment

-5-

in its favor." *Andrew v. Begley*, 203 S.W.3d 165, 169 (Ky. App. 2006) (internal quotation marks and citations omitted). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*" *Jenkins v. Best*, 250 S.W.3d 680, 688 (Ky. App. 2007). Both sides in this case thought there were no material factual disputes. They are correct that the case presents only legal issues.

## ANALYSIS

## <u>BUYER'S PREMIUM</u>

Ward argues the circuit court erred by awarding the buyer's premium to RE/MAX because it suffered no damages resulting from Ward's default. RE/MAX sells property to earn commissions. In this case, the commission was to be paid as a 7% buyer's premium. Buyer's premiums are one method to pay commissions earned by the auctioneer. *See, e.g.*, 1 ALEXANDRA DARRABY, DARRABY ON ART LAW § 5.27 (2024). Kentucky recognizes this form of payment to the realtor and requires notice in auction advertisements, which was given in this case by RE/MAX. KRS[1] 330.230(2). Ward still argues that, because RE/MAX got a commission when it sold the property later to another buyer, then it really suffered no loss.

---

[1] Kentucky Revised Statutes.

The payment of the buyer's premium is a commission earned for work performed. After actual expenses, the realtor may indeed make a profit from the sale. A realtor earns a commission when it provides to the seller an enforceable contract with a buyer. *Cox v. Venters*, 887 S.W.2d 563, 565 (Ky. App. 1994). The buyer's premium was to pay for the work of RE/MAX with respect to the auction and the sale that should have followed that auction.

This auction sale and contract was the work of auctioneer Michael Miller with RE/MAX. This is distinct from any commission RE/MAX earned when it was called upon to obtain another buyer after Ward breached the Contract. The commission for the later sale was earned by Denny Pendley. The circuit court did not err in determining that Ward owed the buyer's premium.

## EARNEST MONEY DEPOSIT

Lertora's cross-appeal argues the circuit court erred in granting summary judgment to Ward on the issue of the earnest money deposit. In its Opinion and Order, the circuit court was not convinced that Sections 14 and 16 "unambiguously [equate] to liquidated damages provisions[.]" R. at 205. The court assumed the sections constituted liquidated damages provisions for the sake of argument. The court then concluded: "the purported liquidated damage amount of $44,500 greatly exceeds the actual damage experienced by Lertora." *Id.* at 206.

The court held Lertora suffered no damages as he sold the Property for $489,000 two weeks after Ward's breach.

To be enforceable as a liquidated damages provision, a contract term must actually indicate that intent by the parties. As we have previously held, such terms are "contractually stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches." *Goetz v. Asset Acceptance, LLC*, 513 S.W.3d 342, 346 (Ky. App. 2016) (quoting *Damages*, BLACK'S LAW DICTIONARY (10th ed. 2014)).

Item 16 in this Contract simply says without explanation that the deposit, which again was never made, was "non-refundable." There is no explanation as to how this was intended to estimate actual damages which might be suffered if a breach occurred. It could just as well indicate that the deposit could not be returned pending the closing of the transaction because it must be applied to the purchase price to be supplemented by other (usually borrowed) funds. Like the circuit court, we do not see this provision as a liquidated damages provision. Even if the provision was intended to serve as a liquidated damages clause, Lertora's claim fails.

Liquidated damages provisions should be upheld "only (1) where the actual damages sustained from a breach of contract would be very difficult to ascertain *and* (2) where, after the breach occurs, it appears that the amount fixed as

liquidated damages is not grossly disproportionate to the damages actually sustained." *Mattingly Bridge Co. v. Holloway & Son Const. Co.*, 694 S.W.2d 702, 705 (Ky. 1985) (emphasis in original) (citation omitted).

Here the damages were not difficult to ascertain. When a buyer breaches a sale contract, the measure of damages is the difference in the value of the property on the date of the breach as compared to the contract price. *Lawson v. Menefee*, 132 S.W.3d 890, 893-94 (Ky. App. 2004). There may be other incidental damages such as interest accrued related to the breach before the property is again sold. All this can be easily measured.

In *Patel v. Tuttle Properties, LLC*, 392 S.W.3d 384 (Ky. 2013), a prospective buyer who was unable to secure financing to close a real-estate transaction sued the sellers after they refused to return the earnest money deposit of $125,000. The trial court granted summary judgment to the sellers, and this Court affirmed. The Kentucky Supreme Court reversed and remanded, stating the trial court must determine whether the earnest money deposit was an allowable award of liquidated damages or a non-allowed penalty before the case could be properly resolved. *Id.* at 386-87. *See generally* Ronald W. Eades, *Penalties Distinguished from Liquidated Damages*, KY. L. OF DAMAGES § 5.2 (2024).

The RESTATEMENT (SECOND) OF CONTRACTS § 356(1) provides the following distinction between a liquidated damages provision and a penalty:

Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

Lertora and Ward agreed on the Contract price of $424,250, plus a buyer's premium of $20,750 to RE/MAX for a total of $445,000. Lertora entered into another successful contract two weeks later and sold the Property for $489,000, over $40,000 more than Ward would have paid. Lertora did not suffer actual damages as he quickly sold the Property for a larger amount and realized a much higher profit than that he expected to receive from the sale to Ward.

The circuit court correctly found that awarding the $44,500 deposit to Lertora would be greatly disproportionate to Lertora's actual damages (viz. $0). If Item 16 were to be applied as a liquidated damages provision, it clearly would have been an impermissible penalty. The circuit court did not err in granting summary judgment to Ward regarding the earnest money deposit.

### CONCLUSION

Lertora was not entitled to the earnest money deposit as liquidated damages because the amount of actual damages could be easily ascertained and because the amount of the deposit was grossly disproportionate to the damages actually sustained by Lertora and thus would have been an impermissible penalty. RE/MAX was entitled to the buyer's premium as its earned commission for the

work performed on the auction.  The Opinion and Order of the Muhlenberg Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT/CROSS-APPELLEE MATTHEW WARD:

Parker M. Wornall
Gregory A. Healy
Louisville, Kentucky

BRIEF FOR APPELLEES/CROSS-APPELLANTS CHAD LERTORA AND RE/MAX REAL ESTATE EXECUTIVES:

Aaron D. Smith
John A. Sowell
Bowling Green, Kentucky